UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S. ORTIZ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GERARDO ALVAREZ, et al.,<br><br>    Defendants. | No. 1:15–cv–00535–KJM–GSA<br><br><br>ORDER |

This matter is before the court on the motion by defendants Israel Lara and Youth Centers of America, Inc. (Youth Centers) to dismiss plaintiffs' second, ninth, and twelfth claims. (ECF No. 5.) Plaintiffs oppose the motion. (ECF No. 16.) The court submitted the matter without a hearing, and now, as explained below, GRANTS it.

I.      SUBJECT MATTER JURISDICTION

It is axiomatic that the first question a federal court must ask before reaching the merits of a case is whether it has the authority to adjudicate the controversy at hand. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (Ginsburg, J.) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case."). Subject matter limitations on federal courts serve institutional interests: "They keep federal courts within the bounds the Constitution and Congress have prescribed." *Id.*

/////

1  "For a court to pronounce upon [the merits] when it has no jurisdiction to do so," "is for a court to act ultra vires." *Id.* (internal quotation marks omitted, alteration in original).

Section 1331 of Title 28 of the United States Code provides district courts with original jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States." In addition, section 1343 of Title 28 provides federal courts with original jurisdiction over any civil action arising under federal civil rights statutes. One such statute is section 1983 of Title 42 of the United States Code. And it is the statute upon which plaintiffs rely in litigating the instant case in this court. (ECF No. 1.) Accordingly, this court is satisfied of its subject matter jurisdiction and thus proceeds to the merits.

## II.  BACKGROUND

### A. Procedural Background

Plaintiffs commenced this action in the Fresno County Superior Court on November 19, 2014. (ECF No. 1, Ex. A.) On April 7, 2015, defendants removed it to the Fresno Division of this District. (ECF No. 1.) On April 14, 2015, defendants Youth Centers and Israel Lara moved to dismiss plaintiffs' second, ninth, and twelfth claims. (ECF No. 5.) Plaintiffs filed a document titled "Supplement to the Notice of Removal," which attaches plaintiffs' opposition to a motion to dismiss filed in the state court. (ECF No. 16.) Defendants have replied. (ECF No. 23.)

### B.  Facts[1]

On April 14, 2015, defendants Youth Centers and Israel Lara moved to dismiss plaintiffs' second, ninth, and twelfth claims. (ECF No. 5.) Plaintiffs filed a document titled "Supplement to the Notice of Removal" which has attached to it plaintiffs' opposition to a motion to dismiss filed in the state court. (ECF No. 16.) Defendants have replied. (ECF No. 23.)

Plaintiff Juan Sandoval worked as an assistant superintendent for Parlier United School District (PUSD) from July 2013 to December 2014. (Pls.' First Am. Compl. ¶¶ 2, 16, ECF No. 1-4.) Plaintiff Gudelia Sandoval worked as principal of Chavez Elementary School and

---

[1] On a motion to dismiss, the court "accept[s] as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002).

2

was employed by PUSD.  (*Id.* ¶ 3.)  Plaintiff Raul Villanueva was the head custodian of Chavez Elementary and was employed by PUSD.  (*Id.* ¶ 4.)  Plaintiff Alfonso Padron worked as a counselor for Youth Centers of America, Inc. (Youth Centers) and was employed under a contract with PUSD.  (*Id.* ¶ 5.)  Plaintiff Luis Ramos was employed with the Community Union Parenting Center at PUSD.  (*Id.* ¶ 6.)  Plaintiff Elida Padron was a retired principal for the PUSD and was under a contract to provide consulting services.  (*Id.* ¶ 7.)  Plaintiff Sandra Ortiz worked with Juan Sandoval to review PUSD's compliance with Title VI of the Civil Rights Act of 1964.  (*Id.* ¶¶ 16–17.)

Defendant Gerardo Alvarez was a managerial employee and was the superintendent of PUSD.  (*Id.* ¶ 8.)  PUSD is a public education institution for kindergarten through grade 12 in Fresno County, California.  (*Id.* ¶ 9.)  The PUSD Board of Trustees is the agent of PUSD.  (*Id.* ¶ 10.)  Defendant Youth Centers is a California corporation.  (*Id.* ¶ 11.)  Defendant Israel Lara was Youth Centers' agent.  (*Id.* ¶ 12.)  Because numerous parties are involved in this case, the court sets forth the complaint's allegations as to each named individual plaintiff under separate headings.

        1.  Plaintiff Juan Sandoval

During the 2013 and 2014 school years, Mr. Sandoval worked with co-plaintiff Ms. Ortiz to review PUSD's compliance with Title VI of the Civil Rights Act of 1964.  (Compl. ¶¶ 16–17.)  Mr. Sandoval endorsed Mr. Raul Villanueva for the PUSB.  (*Id.* ¶ 30.)  When Ms. Ortiz discovered that PUSD was not in compliance and reported her findings to Mr. Sandoval and defendant Alvarez, Mr. Alvarez demoted her.  (*Id.* ¶ 17.)  When Mr. Sandoval told Mr. Alvarez that the decision to demote Ms. Ortiz was unlawful, Mr. Alvarez threatened "to do the same to Mr. Sandoval" if he reported that information to PUSD's board members.  (*Id.* ¶ 18.)  Nonetheless, Mr. Sandoval notified two PUSD board members of Mr. Alvarez's action against Ms. Ortiz; as a result, plaintiffs allege Mr. Alvarez placed Mr. Sandoval on administrative leave on December 19, 2013.  (*Id.* ¶ 19.)  Mr. Sandoval remained on administrative leave until March 12, 2014, when the Board directed him to return to his position because Mr. Alvarez did not provide documentation substantiating his decision to place Mr. Sandoval on leave.  (*Id.* ¶ 20.)  On

or about March 14, 2014, Mr. Alvarez asked Mr. Sandoval to recommend that the Board deny another employee's contract for 2014 and 2015. (*Id.* ¶ 21.) Mr. Sandoval responded that he could not comply with that directive because "the employee had provided excellent service." (*Id.*) Because Mr. Alvarez continued to harass Mr. Sandoval, Mr. Sandoval filed a complaint with PUSD on June 10, 2014. (*Id.* ¶ 22.) Also on June 19, 2014, Mr. Sandoval was again placed on administrative leave and was eventually terminated on December 8, 2014. (*Id.* ¶ 23.)

### 2. Plaintiff Gudelia Sandoval

Mrs. Gudelia Sandoval is Juan Sandoval's wife and principal at Chavez Elementary. (*Id.* ¶ 26.) During the period when Mr. Sandoval was contesting Mr. Alvarez's actions, Mrs. Sandoval was being accused of "failing to fulfill mandated child abuse reporting duties." (*Id.*) She was placed on administrative leave by Mr. Alvarez on October 29, 2014. (*Id.* ¶ 28.)

### 3  Plaintiff Raul Villanueva[2]

Mr. Villanueva was a candidate for the PUSD Board and was endorsed by Mr. Sandoval. (*Id.* ¶ 30.) In November 2014, Mr. Alvarez asked Mr. Villanueva to meet with him, but when Mr. Villanueva requested that he be accompanied by Mr. Sandoval, Mr. Alvarez then refused to meet with him. (*Id.*) On the day of the PUSD Board election, Mr. Alvarez assigned Mr. Villanueva to a remote school location. (*Id.* ¶ 31.) Mr. Villanueva has been on medical leave for stress and anxiety allegedly caused by Mr. Alvarez since November 2014. (*Id.*)

### 4. Plaintiff Alfonso Padron

Mr. Padron was an employee of Youth Centers, providing counseling services for PUSD. (*Id.* ¶ 34.) In May 2014, Mr. Alvarez discussed with Mr. Padron the possibility of hiring Mr. Padron as a PUSD employee. (*Id.*) Mr. Alvarez's brother, Raul Alvarez, a PUSD employee, contacted Mr. Padron "to begin negotiations to start a contract for full time employment." (*Id.*) In August 2014, Raul Alvarez told Mr. Padron, "now that we're handling employment for you, what are you going to do for me?" (*Id.* ¶ 35.) "Mr. Gerardo Alvarez continued to push his

---

[2] The complaint is unclear as to what position Mr. Villanueva held at the time, although he must have been a PUSD employee.

political direction on Mr. Padron as terms of employment." (*Id.*)  A week before the election, Mr. Padron's e-mail access for PUSD was disconnected. (*Id.* ¶ 36.)  Gerardo Alvarez contacted Mr. Padron and told him he was "disappointed in him" for using his personal computer to create a flyer, and endorsing a candidate for PUSD board who was opposed to Mr. Alvarez. (*Id.*)  On or about November 3, 2014, Israel Lara notified Mr. Padron that his contract was terminated with PUSD. (*Id.* ¶ 38.)  He was the only person terminated from Youth Centers who was working on a contract with PUSD. (*Id.*)  When Mr. Padron inquired about the reasons behind his termination, Mr. Lara told him "that the contract termination was a personal attack . . . ." (*Id.* ¶ 39.)  Mr. Lara told Mr. Padron that he would not save one employee, only to lose the rest. (*Id.*)

### 5. Plaintiff Luis Ramos

Mr. Luis Ramos was a volunteer with the Parent Resource Center (PRC) in PUSD. (*Id.* ¶ 40.)  On or about October 7, 2014, when Mr. Ramos turned on his computer, he saw a blank screen; he was told that a technician had accessed his computer and copied all of the files on the computer. (*Id.*)  One day, Mr. Alvarez entered the PRC and demanded Mr. Ramos's keys and computer modem, stating that he had found a campaign flyer on Mr. Ramos's computer endorsing a board candidate whom Mr. Alvarez did not support. (*Id.* ¶ 41.)  Subsequently, e-mails and flyers were distributed "targeting Mr. Ramos and depicting him in false light and defaming his character . . . ." (*Id.* ¶ 42.)

### 6. Plaintiff Elida Padron

In July 2002, Ms. Elida Padron worked as a vice principal, and in 2005 she became a principal with PUSD. (*Id.* ¶ 45.)  After she retired in August 2012 (*id.*), Ms. Padron became a consultant with PUSD and obtained a contract for January 2013 to June 2014. (*Id.* ¶ 46.)  She "would then provide [sic] a contract for the following year." (*Id.*)  That contract, however, was postponed "due to her political affiliations with Mr. Juan Sandoval." (*Id.*)  At one of the monthly board meetings, when the Board verbally attacked the members of the public, Ms. Padron "shook her head at some of the comments . . . which she found to be unprofessional responses to questions from the public." (*Id.* ¶¶ 47–48.)  At the end of the meeting, when Ms.

/////

5

Padron approached the Board President, he told her that her "body language was not supportive of the Board," which "could cause some issues in your continued contract." (*Id.* ¶ 49.)

During the election season, Ms. Padron attended a campaign meeting for Mr. Sandoval. (*Id.* ¶ 51.) Mr. Alvarez was aware of Ms. Padron's attendance. (*Id.*) Some days after the election, Mr. Alvarez confronted Ms. Padron about her political affiliations and asked why she had gone to Mr. Sandoval's election meeting. (*Id.*) In July 2014, Ms. Padron submitted her contract for the following year and sought to have it placed on the agenda for the Board's review. (*Id.* ¶ 52.) However, Mr. Alvarez did not place it on the agenda. (*Id.*) Then in October 2014, Ms. Padron again requested that the contract question be placed on the agenda, and as of October 6, 2014, the matter was on the agenda. (*Id.* ¶ 53.) As of October 11, 2014, Mr. Alvarez had removed the matter from the agenda. (*Id.*) "Ms. Padron's contract renewal was never placed before the . . . Board for review and she was not paid for the 30 days of work performed for [PUSD] while she was awaiting review of the contract." (*Id.*)

C. Claims

The operative complaint alleges twelve claims:

1. Intentional infliction of emotional distress by all plaintiffs against defendants Mr. Alvarez and PUSD Board of Trustees;
2. Negligent infliction of emotional distress by all plaintiffs against all defendants;
3. Defamation by Juan Sandoval, Gudelia Sandoval, Raul Villanueva and Luis Ramos against defendants Mr. Alvarez and PUSD Board of Trustees;
4. Invasion of privacy based on false light theory by Juan Sandoval, Gudelia Sandoval, Raul Villanueva, Luis Ramos against Mr. Alvarez and PUSD Board of Trustees;
5. Invasion of privacy based on publication of private facts theory by Juan Sandoval, Gudelia Sandoval, Raul Villanueva and Luis Ramos against Mr. Alvarez and PUSD Board of Trustee;
6. Misrepresentation by Alfonso Padron and Elida Padron against defendants Mr. Alvarez and PUSD Board of Trustee;

6

7. Intentional interference with prospective economic advantage by plaintiffs Alfonso Padron and Elida Padron against defendants Mr. Alvarez and PUSD Board of Trustees;

8. Negligent interference with prospective economic advantage by plaintiffs Alfonso Padron and Elida Padron against defendants Mr. Alvarez and PUSD Board of Trustees;

9. A claim under 42 U.S.C. § 1983 by all plaintiffs against defendants Mr. Alvarez, PUSD Board of Trustees, Edward Lucero, Israel Lara, and Youth Centers;

10. A claim under California's Bane Act, Cal. Civ. Code section 52.1, by all plaintiffs against defendants Mr. Alvarez and PUSD Board of Trustees;

11. A claim under California Labor Code section 1102.5, by plaintiff Juan Sandoval against defendants Mr. Alvarez, PUSD Board of Trustees, and PUSD; and

12. Wrongful termination in violation of public policy by plaintiffs Juan Sandoval, Gudelia Sandoval, Elida Padron, Alfonso Padron, Luis Ramos against all defendants.

(ECF No. 1-4.)

III.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

IV.   DISCUSSION

Defendants Youth Centers and Israel Lara move to dismiss plaintiffs' second, ninth, and twelfth claims. (ECF No. 5-1.) In essence, plaintiffs request denial of defendants' motion. (ECF No. 16.) Plaintiffs' opposition does not make any substantive arguments for denial of defendants' motion. Nonetheless, in the interest of justice, this court will "examine the complaint itself to see whether it is formally sufficient to state a claim." *Vega-Encarnacion v. Babilonia*, 344 F.3d 37, 41 (1st Cir. 2003). In so doing, the court finds unpersuasive defendants' argument that the court should dismiss plaintiffs' complaint for lack of proper opposition. (ECF No. 23.)

A.   Plaintiffs' Second Claim: Negligent Infliction of Emotional Distress

Defendants argue the complaint does not allege the required elements of a negligence claim. (ECF No. 5-1 at 4–5.)

The negligent causing of emotional distress is not an independent tort, but is a species of negligence. *See Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989). Accordingly, the traditional elements for negligence apply with equal force. *Id.*

8

These are: (1) a duty of care on the defendant's part; (2) the defendant's breach of that duty of care; (3) causation; and (4) harm. *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998).

In "direct victim" cases, as in this case, California allows recovery even in the absence of impact and physical injury. *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 919 (1980) ("emotional injury may be fully as severe and debilitating as physical harm, and is no less deserving of redress," therefore, "the refusal to recognize a cause of action for negligently inflicted injury in the absence of some physical consequence is . . . an anachronism").

In California, "courts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999). Even then, "a preexisting contractual relationship, without more, will not support a recovery for mental suffering where the defendant's tortious conduct has resulted only in economic injury to the plaintiff." *Id.* at 554–55; *Mercado v. Leong*, 43 Cal. App. 4th 317, 324 (1996) (noting "a breach of the duty must threaten physical injury, not simply damage to property or financial interests"). Moreover, "where the conduct alleged is intentional, it cannot be used as a basis for a negligent infliction of emotional distress claim." *Edwards v. U.S. Fid. & Guar. Co.*, 848 F. Supp. 1460, 1466 (N.D. Cal. 1994).

Here, plaintiff Alfonso Padron was an employee of Youth Centers providing parenting and counseling services for PUSD. (Compl. ¶ 34.) On November 3, 2014, Israel Lara notified Mr. Padron his contract with PUSD was terminated. (*Id.* ¶ 38.) His contract was the only contract terminated. (*Id.*) When Mr. Padron inquired about the decision to terminate, Mr. Lara told him the "termination was a personal attack on Mr. Padron." (*Id.* ¶ 39.) Further, Mr. Lara did not try to save Mr. Padron's contract, stating, "why would [he] save one employee and lose 50." (*Id.*) From these allegations, it is apparent plaintiff's injury stems from a contractual relationship, and the complaint alleges economic harm without any physical injury. The complaint is devoid of any allegations of physical harm caused by Youth Centers' conduct and of allegations showing an exception to the general requirement of physical harm. Moreover, as

alleged, Mr. Lara's conduct in terminating Mr. Padron's contract was intentional; plaintiffs do not plead any negligence in Mr. Lara's conduct.

The court GRANTS defendants' motion. Plaintiffs are granted leave to amend if they can do so consonant with Rule 11.

B.   Plaintiffs' Ninth Claim: 42 U.S.C. § 1983

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983

Congress enacted § 1983 under its power provided in section 5 of the Fourteenth Amendment to pass "appropriate legislation" enforcing the Fourteenth Amendment. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 does not serve as an independent source of substantive rights; rather it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). The Ninth Circuit has described the requirements of a § 1983 claim as: "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton*, 947 F.2d at 1420. "[Section] 1983 . . . contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels v. Williams,* 474 U.S. 327, 329–30 (1986).

On a fundamental level, plaintiffs' ninth claim does not specify what federal rights they are seeking to vindicate against defendants Youth Centers and Mr. Lara. In addition, the ninth claim does not allege Youth Centers and Mr. Lara were acting under color of state law in terminating the contract at issue. The court GRANTS defendants' motion, while giving plaintiffs leave to amend if they can do so consonant with Rule 11.

/////

C. <u>Plaintiff's Twelfth Claim: Wrongful Termination in Violation of Public Policy</u>

Under California law, "an employer's traditional broad authority to discharge an at-will employee may be limited . . . by considerations of public policy." *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 172 (1980) (quoting *Petermann v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 396*, 174 Cal. App. 2d 184, 188 (1959)). To establish a claim for wrongful termination in violation of public policy, a plaintiff must prove the following: (1) an employer-employee relationship; (2) termination of the employee's employment; (3) the termination violated public policy; and (4) the termination caused plaintiff harm. *Haney v. Aramark Unif. Servs., Inc.*, 121 Cal. App. 4th 623, 637 (2004). Here, only Mr. Padron, Mr. Lara, and Youth Centers are implicated by the instant motion.

1. Israel Lara

Mr. Padron's claim cannot proceed against his alleged supervisor Mr. Lara. "As a matter of law, only an employer can be liable for the tort of wrongful discharge in violation of public policy." *Khajavi v. Feather River Anesthesia Med. Grp.*, 84 Cal. App. 4th 32, 53 (2000). An individual supervisor cannot be sued for wrongful discharge in violation of public policy. *Reno v. Baird*, 18 Cal. 4th 640, 664 (1998); *Bruin v. Mills Coll.*, No. 06-05209, 2007 WL 419783, at *8 (N.D. Cal. Feb. 6, 2007) (noting "the Court of Appeal of California unequivocally holds that mere supervisors cannot be held liable for non-FEHA based *Tameny* claims").

Accordingly, the court GRANTS defendants' motion with prejudice to the extent plaintiffs seek to bring a *Tameny* claim against Mr. Lara.

2. Youth Centers

Mr. Padron's *Tameny* claim against Youth Centers cannot proceed as pled because the allegations do not establish Youth Centers took adverse action against Mr. Padron. The relevant allegation states merely that when Mr. Lara informed Mr. Padron that PUSD had terminated Mr. Padron's contract, Mr. Padron asked why Youth Centers "failed to intervene on his behalf . . . ." (Compl. ¶ 39.) It appears, therefore, the adverse employment action plaintiff Padron seeks to attribute to Youth Centers is a "failure to intervene." The allegations, however, are too conclusory to put Youth Centers on notice of the alleged misconduct attributed to it. It is

not the province of this court to guess what plaintiffs allege.  Accordingly, the court GRANTS defendants' motion to dismiss Mr. Padron's twelfth claim against Youth Centers.  Mr. Padron is granted leave to amend if he can do so consonant with Rule 11.

V.     CONCLUSION

For the foregoing reasons, the court orders as follows:

1. Plaintiffs' second claim for negligent infliction of emotional distress is DISMISSED with leave to amend.
2. Plaintiffs' ninth claim brought under 42 U.S.C. § 1983 is DISMISSED with leave to amend.
3. Plaintiffs' twelfth claim for wrongful termination in violation of public policy is DISMISSED with prejudice as alleged against Mr. Lara.
4. Plaintiffs' twelfth claim for wrongful termination in violation of public policy is DISMISSED with leave to amend as alleged against Youth Centers.
5. Plaintiffs' amended complaint is due within twenty-one (21) days of the date of this order.
6. This order resolves ECF No. 5.
7. Plaintiffs' motion to amend the complaint (ECF No. 25) is denied as MOOT.

IT IS SO ORDERED.

DATED:  August 26, 2015.

_____
UNITED STATES DISTRICT JUDGE