# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA ORTIZ, *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>GERARDO ALVAREZ, *et al.*,<br><br>  Defendants. | Case No. 1:15-cv-00535-DAD-EPG<br><br>**FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT AND REQUEST FOR MONETARY SANCTIONS AS TO RAUL VILLANEUVA BE GRANTED IN PART AND DENIED IN PART**<br><br>(ECF No. 161)<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

Defendants Parlier Unified School District and Gerardo Alvarez (collectively, the "District Defendants") have moved to enforce a settlement agreement with Raul Villanueva ("Mr. Villanueva") and for monetary sanctions against said party in the amount of $4,891.50. (ECF No. 161). The settlement was negotiated in off-the-record discussions with a magistrate judge, and the parties assented to the terms of the agreement on the record in open court. Mr. Villanueva opposes the motion, arguing that he rescinded his acceptance of the settlement agreement because he felt coerced by the settlement conference magistrate judge to accept the offer and because he was not in his right state of mind when he agreed to the settlement terms. (ECF No. 163). Mr. Villanueva also argues that he should not be sanctioned for his refusal to execute the written settlement agreement because he has not demonstrated reprehensible

1

conduct warranting the imposition of sanctions and because the sanction sought by the District Defendants is tantamount to an award of attorney fees.

After reviewing the relevant law and facts, the Court recommends that the District Judge grant in part and deny in part the District Defendants' motion by enforcing the settlement agreement but not awarding sanctions.

**I.  BACKGROUND**

Raul Villanueva was employed by Parlier Unified School District ("PUSD") as the head custodian of Chavez Elementary. Mr. Villanueva is one of a number of former employees of PUSD in this lawsuit who are alleging, among other things, retaliation and harassment for political affiliation and the exercise of protected speech in violation of the First and Fourteenth Amendments. Specifically, Mr. Villanueva's allegations in the Fourth Amended Complaint are as follows:

> Mr. Raul Villanueva announced his candidacy for Parlier Unified School Board in 2014. Mr. Villanueva made it publically known that he was endorsed by Mr. Juan Sandoval. On or about November of 2014, Gerardo Alvarez requested to meet with Mr. Villanueva. Mr. Villanueva requested to be accompanied by Mr. Sandoval. Mr. Alvarez refused to meet with Mr. Villanueva with Mr. Sandoval present.
>
> On the day of the Parlier Unified School Board Election, Mr. Alvarez reassigned Raul Villanueva to a remote school site location (Exhibit G- Parlier Unified School District Notice of Involuntary Transfer). Mr. Villanueva has been on medical leave for stress and anxiety since November of 2014.
>
> Mr. Alvarez has distributed flyers and political propaganda depicting Mr. Raul Villanueva as supporter of criminal activity (See Exhibit D – Flyer defaming the Plaintiffs). The flyer distributed by Mr. Alvarez during Parlier Board Meetings accused Mr. Raul Villanueva of supporting criminal activity alleged against Juan Sandoval, Gudelia Sandoval and Mary Villanueva.
>
> Mr. Villanueva is accused of promoting their political elections with school district equipment for mass production. Furthermore, the flyer alleges that "Villanueva friends and family members take home hundreds of thousands of dollars," and misappropriate school funds.

(ECF No. 67 at 9).

On July 26, 2017, Magistrate Judge Stanley A. Boone conducted a settlement conference in this action. (ECF No. 118). Counsel for the Plaintiffs, Jeff Reich and Alexia

2

Kirkland, and counsels for the Defendants, Mart Benjamin Oller, IV and Justin Campagne, were present. *Id.* Mr. Villanueva was represented by his counsel, Alexia Kirkland ("Ms. Kirkland"). During the conference, Mr. Villanueva agreed to settle his claims against the District Defendants for $40,000.00. The terms of the settlement were placed on the record, (ECF No. 118), and on July 28, 2017, Judge Boone issued an order directing Mr. Villanueva to file dispositional documents within forty-five days, (ECF Nos. 119, 131).

The settlement was put on the record as follows:

> THE COURT: All right. If I could have appearances, beginning with the plaintiff and your client, since we're dividing this up.
>
> MS. KIRKLAND: Good afternoon, Your Honor. Alexia Kirkland appearing on behalf of Raul Villanueva, present at counsel table.
>
> THE COURT: All right.
>
> MR. OLLER: Good afternoon, Your Honor. Mart Oller appearing on behalf of the defendants, Parlier Unified School District, Parlier Unified School District Board of Trustees, and defendant, Gerardo Alvarez, who is present here at counsel table.
>
> THE COURT: All right. Mr. Oller, why don't I have you set forth the terms. Ms. Kirkland, I will have you listen carefully. Mr. Villanueva, I'll ask you if that is also, in fact, the terms of the agreement. So, Mr. Oller.
>
> MR. OLLER: Thank you, Your Honor. In exchange for payment by Parlier Unified School District on behalf of the defendants that I just listed in the amount of $40,000 made payable to Mr. Villanueva and his attorney, Ms. Kirkland, Mr. Villanueva will sign a release of all claims as to all known and unknown claims and will waive the provisions of Civil Code, California Civil Code § 1542. The release will indicate that there's no admission of liability on the part of the defendants who are involved in the release. Each side will bear their own costs and fees, including any attorney fees. And this is subject to approval by the Parlier Unified School District Board and we believe that all of this can be accomplished within the next 30 days as far as the approval and then, of course, it will take some time to then have the settlement release signed and then the exchange of the money. So overall, it might take as much as days to get the check in hand, but as far as the Board approval we think that can be accomplished, at least presented to the Board for approval within 30 days.
>
> THE COURT: All right. Ms. Kirkland, is that your understanding of the terms in the agreement?
>
> MS. KIRKLAND: Yes, Your Honor. That's an accurate representation of the terms of the agreement –

3

> THE COURT: All right. And –
>
> MS. KIRKLAND: -- between the parties.
>
> THE COURT: All right Sorry, Ms. Kirkland. Sorry to interrupt. And, Mr. Villanueva, is that, in fact, what you understand the agreement to be?
>
> MR. VILLANUEVA: Yes.
>
> THE COURT: All right. All right. So the Court notes that this case as to this plaintiff only has settled. The Court will vacate any and all dates related to this plaintiff only and will order that dispositional documents be filed as to this plaintiff only, let's say within 45 days of today's date. And that should be it as to this plaintiff only. So, Mr. Villanueva, you are free to leave at this point. Mr. Villanueva, thank you.
>
> MR. VILLANUEVA: All right.

(ECF No. 131). Most of the other Plaintiffs declined to settle. (ECF Nos. 118, 125).

On August 2, 2017, a hearing was held before Judge Boone regarding the settlement reached between Mr. Villanueva and the District Defendants. (ECF No. 122). Ms. Kirkland appeared telephonically on behalf of Mr. Villanueva. *Id.* Mart Benjamin Oller, IV appeared on behalf of the District Defendants. *Id.* After the hearing, Judge Boone issued an order directing Mr. Villanueva and the Defendants to file dispositional documents in accordance with the July 28, 2017 order. (ECF No. 123). The August 2, 2017 order provided:

> This case has settled as to Plaintiff Villanueva on the record and in open court and the Court will proceed consistent with the Court's July 28, 2017 order (ECF No. 119), unless and until a noticed motion seeking relief from the settlement is filed. The parties will proceed towards the settlement terms including Defendants Alvarez, Parlier Unified School District, and Parlier Unified School District Board of Trustees seeking Board approval, and if approved, tendering payment upon execution of the agreement. If the parties wish to seek further court intervention, the parties are reminded that any non-breaching party may be entitled to attorney fees and costs related to any breach of the settlement if the Court finds a breach of the settlement.

*Id.* at 123.

On January 10, 2018, the District Defendants filed a motion to enforce the settlement reached with Mr. Villanueva and for monetary sanctions in the amount of $4,891.50 for the fees incurred in moving to enforce the settlement agreement. (ECF No. 161). The District

4

Defendants contend that Mr. Villanueva has refused to execute a release of his claims and has refused to file the dispositional documents in contravention of the settlement agreement.

On January 24, 2018, Mr. Villanueva, through his counsel filed an opposition to the motion. (ECF No. 163). Mr. Villanueva contends that he has rescinded his acceptance of the offer by the District Defendants because he was affronted by his discussions with Judge Boone, and believes that the discussions unfairly weighed in his acceptance of the settlement offer. *Id.* at 2, 3. He concedes that the Court has inherent authority to enforce the settlement agreement. Mr. Villanueva argues that his "position is not based on a dispute regarding inaccurate or inconsistent terms." *Id.* at 4. His position is also "not based on fraud committed by the adverse DISTRICT DEFENDANTS, nor is it based on a mistake of the terms of the agreement." *Id.* "A 'fundamental defect in the agreement itself' is not a factor in the present case." *Id.* "If the Court declines exercise of its authority in enforcing the judgment, then it will need to do so based on the facts of Plaintiff VILLANUEVA due to the absence of legal authority to advance the position." *Id.*

Mr. Villanueva also contends that the District Defendants' request for sanctions should be denied because he has not demonstrated bad faith conduct. *Id.* at 4-5. Mr. Villanueva further contends that the request for sanctions is in fact a request for attorney fees, and there is no provision in the settlement agreement that allows for recovery of attorney fees for its enforcement. *Id.* at 6.

In his declaration in opposition to the motion, Mr. Villanueva states, in relevant part:

> I attended the Mandatory Settlement Conference on July 26, 2017, which was ordered by the court.
>
> In the previous settlement discussions Defendants had offered an amount to each plaintiff exceeding the $40,000.00 offer at the Mandatory Settlement Conference.
>
> Judge Boone indicated that the claimed injury for Post-Traumatic Stress Disorder would not be considered because it could not be proven at trial.
>
> Judge Boone stated that $40,000.00 was a reasonable offer, I was floored and felt belittled.
>
> It was emphasized that the Superintendent of a school has a right to relocate employees.

> I agreed to settle the claim for $40,000.00.
>
> Judge Boone requested that the parties go into the courtroom to record the settlement. I felt my blood pressure go up, I wanted to get out of the courtroom. Afterwards I had to lay down on a bench to recuperate.
>
> I have been receiving treatment in the Mental Health Department by my psychologist at the Veteran Hospital regarding this specific incident.

(ECF No. 163 at 9).

On February 7, 2018, a hearing was held before this Court on the motion to enforce and for sanctions.[1] (ECF No. 165). Mr. Villanueva read the following prepared statement:

> I agreed verbally to settle because I was under a high state of anxiety and confusion. I was coerced, I was under duress, and the judge was very biased in his attack against me. My attorney did not defend me, speak up on my behalf, nor advise me—at all. When we—my wife and I went into the conference room, right away the judge told my wife that she couldn't be with me. But then he changed his mind and said, she could stay but she could not talk. Before we started the judge says, I'm going to the other party. I said, don't you want to hear what I have to say. He said, go ahead. While I was reading my letter or story, I mentioned I served two years in the army. He kind of laughed and says, why are you wearing a Marine Corps emblem on your shirt. And I said, because I served in the Marine Corps three years. And I mentioned—and my anxiety was going up. I mentioned—I was moved because of political retaliations from my position. He said, the superintendent had every right to move you. I also said the superintendent distributed flyers saying that I was associating with criminals, and he answered, you can't prove it. I also told him the superintendent had triggered me into depression and I was stressed out. I went to the hospital, veteran's hospital and I was diagnosed with having PTSD, Post-Traumatic Stress Disorder. The judge then told me, you can't prove it because you don't have an expert —you don't have an expert witness. The judge also said that the district had done me a favor by moving me closer to my house nearer school and easier to clean. But in that case, your honor, I drive so why would it be closer, to seven miles closer, they weren't doing me a favor. All through the conference, my attorney never defended me, interjected on my behalf, nor advised me. All she said, this is how this judge is. By this time I was having a hard time concentrating. I was under duress, did not understand what was going on. And, Judge Boone was just saying, you're not even worth $20,000.00. Your case is not worth nothing. You guys are just a group wanting to take kid's money. By that time, I was feeling terrible, my stomach was hurting, my heart was pounding. Then he said, I'm going to talk to the settlement people. He came back and said $40,000.00, that's all

---

[1] The February 7, 2018 hearing was audio recorded. (ECF No. 165). A copy or transcript of the recording is available upon the request of the parties.

6

> they're going to offer. By then I was already very confused. You know—I felt I had to accept it so—He brought me into his courtroom. And while he was talking to me I didn't have hearing aids, I couldn't understand what he was saying and he told me do you understand, and I said, yes. I don't—I couldn't hear. And then, my attorney told me do you understand, and I said, yeah. I just wanted to get out of the courtroom. This is why I'm saying, your honor, that it shouldn't be enforced—and later on Mr. Padron sent me—the Canon laws. And I read them and there it says a judge is supposed to be respectful, courteous. A judge may encourage and seek to—facilitate settlement but should not act in a manner that coerces any party into surrendering the right to have the—controversy resolved by the courts. Your honor, this is why I feel that it should not be enforced. I was not in my right state of mind when I agreed. When I went home it finally sank into me that I had done something I didn't want to do because I was just all confused. So, although I am an adult I cannot—grasp—I suffered a concussion in Vietnam, I lost my hearing, so I am not able to really grasp until I sit down and analyze the situation. And this is what has happened to me.

*Id.*

The Court then asked Ms. Kirkland, "During the course of the settlement conference did you give your own independent advice regarding the merit of the claims to Mr. Villanueva." Ms. Kirkland responded, "Correct, yes I did—including weighing on the legal information that was provided by Judge Boone: what evidence could be presented at trial, what evidence could not be presented at trial, what type of foundation you needed in order to present that evidence, and weighing in on Judge Boone's recommendation." *Id.*

Now before the Court is the District Defendants' motion to enforce the settlement and for monetary sanctions. (ECF No. 161).

## II. DISCUSSION

### A. Enforcement of Settlement Agreement

The parties agree that *Doi v. Halekulani Corp.*, 276 F.3d 1131(9th Cir. 2002), is the controlling case for this dispute. In *Doi,* an employee filed a discrimination lawsuit against her employer. *Id.* at 1134. The parties entered into settlement negotiations, and the district court facilitated discussions that ultimately bore a settlement agreement. *Id.* The settlement agreement required the employee to release all claims against the employer and to execute a stipulation dismissing the action with prejudice. *Id.* In open court, the parties announced that they had reached a settlement and placed the terms of the settlement on the record. *Id.* The attorney for

the employer recited the terms of the settlement, and the attorney for the employee assented to the terms. *Id.* The court then asked the employee, "The terms, as stated right now, do you agree to those? . . . You do agree?" *Id.* The employee responded, "Yeah." *Id.*

Within two days of reaching the agreement and placing it on the record, the employee refused to execute the release and the stipulation to dismiss, and proposed new settlement terms inconsistent with those placed on the record. *Id.* at 1135. With leave of the Court, the employer moved to enforce the settlement agreement and for sanctions in the form of attorney fees. *Id.* The district court granted the motion, awarded a sanction of $1,000, and entered judgment dismissing the case with prejudice. *Id.* at 1136.

The employee appealed, arguing, among other things, that she did not enter into any binding settlement agreement because she did not actually intend to be bound until there was a writing. *Id.* at 1136-37. The Ninth Circuit affirmed the district court's decision. *Id.* at 1141. The Court reasoned:

> In this case, however, the settlement was negotiated in off-the-record discussions with the court. The parties then went into open court and announced that there was a settlement. The settlement contained agreement as to all material terms, which terms were put on the record. And in response to direct questioning by the court, Doi stated that she agreed with the terms. Unlike in *Ciaramella*, then, there was no need for the court to engage in factual inquiries to determine whether Doi agreed to be bound by the terms of the agreement. Any question as to Doi's intent to be bound was answered when she appeared in open court, listened to the terms of the agreement placed on the record, and when pressed as to whether she agreed with the terms, said "yeah."

*Id.* at 1137–38 (comparing the facts in *Doi* to those in *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320 (2d Cir.1997)).

The case at bar is indistinguishable from *Doi*. Here, like in *Doi*, the parties entered into settlement negotiations, and the district court facilitated discussions that ultimately bore a settlement agreement. The settlement agreement required Mr. Villanueva to execute a release of all claims against the District Defendants. In open court, Mr. Villanueva and the District Defendants announced that they had reached a settlement and placed the terms of the settlement on the record. Counsel for the District Defendants recited the terms of the settlement, and Ms. Kirkland assented to the terms. Judge Boone then asked Mr. Villanueva, "And, Mr. Villanueva,

is that, in fact, what you understand the agreement to be?" Mr. Villanueva responded, "Yes." Thus, any question as to Mr. Villanueva's intent to be bound was answered when he appeared in open court, listened to the terms of the agreement placed on the record, and when pressed as to whether he agreed with the terms, said "yes."

Mr. Villanueva does not expressly challenge the settlement amount or argue that $40,000.00 is an unfair compensation as settlement, taking into account the risk and costs involved in further litigation. Instead, Mr. Villanueva presents two arguments in opposition to the motion to enforce the settlement agreement: (1) he was not in his right state of mind when he agreed because he was confused and could not hear, and (2) he felt coerced to accept the settlement by Judge Boone.

The Court finds no support in the record for Mr. Villanueva's first argument. Mr. Villanueva recounted the conversations that took place during and after settlement discussions with great detail. Mr. Villanueva manifested no opposition to the agreement during the off-the-record discussions. He admits, "I agreed to settle the claim for $40,000.00." Mr. Villanueva manifested no opposition to the agreement when asked on the record whether he understood and assented to its term. He answered Judge Boone's questions on the record clearly, without equivocation. He admits, "[Judge Boone] told me, do you understand, and I said, yes." Furthermore, during the settlement conference, Mr. Villanueva was accompanied by his attorney, who did not report any issues with Mr. Villanueva's perceptions at the time of the conference or since. Mr. Villanueva admits that Ms. Kirkland asked him if he understood the terms of the settlement, and he responded, "yeah." Ms. Kirkland stated that she participated in the settlement with her client, explaining and weighing Judge Boone's comments and recommendations. Ms. Kirkland also agreed to the terms of the agreement as stated on the record. Mr. Villanueva was also accompanied by his wife. The record does not reflect that his wife manifested any opposition to the agreement or indicated to anyone that Mr. Villanueva was confused or could not hear. In short, Mr. Villanueva's conduct was consistent with knowing and voluntary acceptance of the terms of the settlement, and gave every appearance that he intended to be bound by the agreement. There is no evidence, such as a doctor's note, of a physical or

mental impairment. Merely being anxious during such an important decision does not constitute a mental infirmity. Thus, Mr. Villanueva entered into a binding settlement agreement.

Mr. Villanueva's argument that he felt coerced by Judge Boone to accept the settlement does not change the outcome. Under California law, a party can rescind a contract if his consent "was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." Cal. Civ. Code § 1689. However, Judge Boone acted not as an interested party, but as a neutral mediator. *See also Davenport v. Korik*, No. 214CV00325TLNDBPC, 2016 WL 6039027, at *6 (E.D. Cal. Oct. 14, 2016) ("Even if Plaintiff was unduly influenced by the Court's negotiation between the parties, the [settlement judge] is neither a party to the settlement nor jointly interested with any party to the settlement. The Court participated in the settlement conference as a neutral mediator between the parties in this action. The parties agreed to participate in settlement discussions and after approximately an hour and one half of negotiations reached an agreement. Plaintiff cannot rescind the agreement based upon the participation of a neutral mediator to the proceedings."). Furthermore, as described by Mr. Villanueva, Judge Boone's conduct during settlement discussions does not amount to coercion. *See* COERCE, Black's Law Dictionary (10th ed. 2014) ("To compel by force or threat"); DURESS, Black's Law Dictionary (10th ed. 2014) ("Broadly, a threat of harm made to compel a person to do something against his or her will or judgment; esp., a wrongful threat made by one person to compel a manifestation of seeming assent by another person to a transaction without real volition."). Mr. Villanueva does not contend that Judge Boone threatened him in any way. Rather, he contends that Judge Boone expressed his opinions in a forceful manner. Such conduct does not amount to duress under the law. Thus, Mr. Villanueva has failed to show coercion to invalidate the agreement.

As stated by the court in *Doi*, "At a time where the resources of the federal judiciary . . . are strained to the breaking point, we cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits [him]. The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood

gates to this kind of needless satellite litigation." 276 F.3d 1131, 1141 (9th Cir. 2002). Accordingly, the Court recommends that the District Defendants' motion to enforce the settlement be granted.

### B. Attorney Fees Sanctions

A court has the inherent power to sanction a party or its lawyers if it acts in "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," as well as for "willful[ ] abuse [of the] judicial processes." *Gomez v. Vernon*, 255 F.3d 1118, 1133–34 (9th Cir. 2001) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766(1980) (internal citations and quotations omitted)). "Sanctions [] are justified 'when a party acts for an improper purpose—even if the act consists of making a truthful statement or a non-frivolous argument or objection." *Id.* at 1134 (citing *Fink v. Gomez,* 239 F.3d 989 (9th Cir.2001)). The determination whether to sanction a party is in the district court's discretion. *Doi*, 276 F.3d at 1140.

The District Defendants request that the Court sanction Mr. Villanueva in the amount of $4,891.50, which comprises the fees associated with moving to enforce the settlement agreement. They argue a sanction is warranted because Mr. Villanueva has refused to abide by the settlement terms that were stated on the record and his refusal to do so is frivolous and in bad faith.

Relying on *Bonded Apparel, Inc. v. R2D Apparel, Inc.*, Mr. Villanueva argues that his conduct did not "constitute the type of 'bad faith, vexatious [ ], wanton[ ], or ... oppressive' conduct that gives rise to sanctions under the Court's inherent power." No. 215CV04406ODWJEM, 2016 WL 6871282, at *1 (C.D. Cal. July 18, 2016) (citing *Gomez,* 255 F.3d at 1134). He asserts that the District Defendants were not harmed by his attempt to rescind the settlement agreement because the action is proceeding to trial with the remaining parties.

The Court recommends denying the District Defendants' request for sanctions under the circumstances in this action. While the facts in this case mirror those in *Doi*, the Court cannot conclude that Mr. Villanueva's actions were done in bad faith or for an improper purpose. Mr. Villanueva's attempt to rescind the settlement agreement appears to be based on a sincere belief

11

that the settlement judge had unduly influenced his decision to settle. He alerted the District Defendants to his change of mind promptly. He is not well versed in the law and appears to have believed he could change his mind under these circumstances. He attended court and appeared genuinely troubled by the circumstances. Thus, the Court does not believe Mr. Villanueva has acted in bad faith. Accordingly, the Court recommends denial of District Defendants' motion for sanctions.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. The District Defendants' motion to enforce the settlement agreement be GRANTED;
2. Raul Villanueva be COMPELLED to execute a release in accordance with his oral agreement in open court within five days of the order adopting these findings and recommendations;
3. The District Defendants' motion for sanctions be DENIED; and
4. Raul Villanueva's claims against the District Defendants be dismissed with prejudice.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 2, 2018**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE