1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SANDRA ORTIZ, et al.,                    No.  1:15-cv-00535-DAD-EPG

12                 Plaintiffs,

13        v.                                  ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANTS'
14   GERARDO ALVAREZ, et al.,                 MOTIONS FOR SUMMARY JUDGMENT

15                 Defendants.                (Doc. Nos. 132, 133, 134, 135, 136)

16

17            This matter comes before the court on five separate motions for summary judgment, all of

18   which were filed on October 24, 2017.  The first four of these motions were filed by defendants

19   Gerardo Alvarez and Parlier Unified School District (collectively "district defendants") for

20   summary judgment in their favor as to each of the plaintiffs' claims brought under 42 U.S.C. §

21   1983.  (Doc. Nos. 132, 133, 134, 135.)  The fifth motion was filed by defendants Youth Centers

22   of America and Israel Lara (collectively "YCA defendants") seeking summary judgment in their

23   favor as to each of plaintiff Alfonso Padron's claims brought against the YCA defendants.  (Doc.

24   No. 136.)  A hearing on these motions was held on November 21, 2017.  Attorney Jeff Reich

25   appeared on behalf of plaintiffs Alfonso Padron and Elida Padron, and attorney Alexia Kirkland

26   appeared on behalf of plaintiffs Gudelia Sandoval and Luis Ramos.  Attorney Mart B. Oller

27   appeared on behalf of the district defendants and attorney Justin T. Campagne appeared on behalf

28   of the YCA defendants.  Having considered the parties' briefs and oral arguments, and for the

reasons stated below, the court will grant the district defendants' motions for summary judgment as to the § 1983 claims brought by plaintiffs Alfonso Padron and Elida Padron; grant the YCA defendants' motion for summary judgment as to claims brought by plaintiff Alfonso Padron; and deny the district defendants' motion for summary judgment as to the § 1983 claims brought by plaintiffs Gudelia Sandoval and Luis Ramos.

## BACKGROUND

Plaintiffs commenced this action on April 7, 2015 against defendants Superintendent Gerardo Alvarez, Parlier Unified School District ("PUSD"), Youth Centers of America ("YCA"), and Israel Lara, the former director of YCA. (Doc. No. 1.) The case proceeds on plaintiffs' fourth amended complaint. (Doc. No. 67.) Therein, plaintiffs allege generally that defendant Alvarez, while acting as PUSD's Superintendent, solicited political campaign contributions from certain plaintiffs in exchange for terms of employment, used PUSD funds to support certain political candidates, and took adverse employment actions against plaintiffs based on their political affiliations. (*Id.* at ¶ 2.) Plaintiffs further allege that PUSD approved, through its school board, defendant Alvarez's decisions without affording plaintiffs due process. (*Id.* at ¶ 3.) Plaintiff Alfonso Padron separately alleges that the YCA defendants took adverse employment actions against him at the direction of defendant Alvarez. (*Id.* at ¶ 4.)

On October 24, 2017, defendant Alvarez filed separate motions for summary judgment as to each of the plaintiff's § 1983 claims.[1] (Doc. Nos. 132, 133, 134, 135.) The YCA defendants filed a motion seeking summary judgment in their favor as to plaintiff Alfonso Padron's claims for intentional infliction of emotional distress, retaliation actionable under § 1983 in violation of the First Amendment, and wrongful termination. (Doc. No. 136.) On November 7, 2017, plaintiffs Alfonso and Elida Padron filed their oppositions. (Doc. Nos. 141, 142, 143.) On November 14, 2017, the defendants filed their replies. (Doc. Nos. 144, 145, 146.) On November

---

[1] The district defendants initially moved for summary judgment on plaintiffs' first, fifth, sixth, seventh, and tenth causes of action as well, which are tort claims brought under California law. (Doc. No. 132-1 at 5–6.) In the district defendants' reply in support of their pending motions for summary judgment, however, they have withdrawn their requests for adjudication of those claims at this time. (Doc. Nos. 144 at 5, 145 at 6, 148 at 3, 149 at 2.)

17, 2017, defendant Alvarez filed replies in support of his summary judgment motions against plaintiffs Sandoval and Ramos, noting their non-opposition to his motions. (Doc. Nos. 148, 149.) Thereafter, on November 17, 2017, plaintiffs Sandoval and Ramos filed untimely oppositions, accompanied by an *ex parte* application for an extension of time. (Doc. Nos. 150, 151, 152.) At the November 21, 2017 hearing on the motions for summary judgment, the court granted the application for an extension of time, allowed the filing of the untimely oppositions by plaintiffs Sandoval and Ramos, and granted defendants fourteen days to file replies thereto. (Doc. No. 155.) Defendants thereafter filed their replies on December 5, 2017. (Doc. Nos. 157, 158.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider

3

admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Undisputed facts are taken as true for purposes of a motion for summary judgment. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . .. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## DISCUSSION

The court notes at the outset that the factual background relevant to the pending motions for summary judgment are unique as to each plaintiff. The court will therefore discuss each plaintiff, and the defendants' motions for summary judgment as to each plaintiff's claims, in turn.

/////

1          **A. Plaintiff Alfonso Padron**

2                  The parties offer the following undisputed facts with respect to plaintiff Alfonso Padron's

3          [hereinafter "Alfonso"] eighth cause of action under § 1983 for violation of the First and

4          Fourteenth Amendments.  Defendant YCA is a California non-profit corporation that provides

5          education and recreational services.  (Doc. No. 143-2 at ¶ 16.)  In approximately January 2014,

6          YCA submitted a proposal to PUSD to provide counseling services at an elementary school.  (*Id.*

7          at ¶ 17.)  On or about September 2014, YCA and PUSD entered into a Memorandum of

8          Understanding ("MOU") regarding counseling services.  (*Id.* at ¶ 19.)  In September 2014, YCA

9          hired Alfonso to provide the counseling services set forth in the MOU.  (*Id.* at ¶¶ 21–22.)

10                 The parties dispute the circumstances surrounding Alfonso's eventual termination in

11         November 2014.  According to defendant YCA, PUSD notified YCA that it no longer wished to

12         continue purchasing the services set forth in the MOU.  (*Id.* at ¶ 23.)  Thus, on November 3,

13         2014, YCA's Executive Director Edgar Pelayo informed Alfonso that he was being terminated.

14         (*Id.* at ¶¶ 23–24.)  YCA asserts that the decision to terminate Alfonso was based entirely on the

15         cancelation of the MOU and for no other reason.  (*Id.* at ¶ 28.)

16                 Plaintiff Alfonso asserts, however, that PUSD's proffered reason for canceling the MOU

17         is pretextual.  Alfonso contends that within a month of his termination, PUSD granted hundreds

18         of thousands of dollars of contracts, including one contract that covered the same services that he

19         had provided.  (*Id.* at ¶ 23.)  Alfonso also asserts that Executive Director Pelayo told Alfonso that

20         he did not know why Alfonso was being terminated, but that defendant Lara—YCA's former

21         Executive Director—had made the decision.  (*Id.* at ¶¶ 24–25.)  Alfonso argues that his

22         termination was in fact directed by defendants Alvarez and Lara, in retaliation for Alfonso's

23         creation and dissemination of campaign flyers for school board candidates whom Alvarez and

24         Lara opposed.  (*Id.* at ¶¶ 27–28.)

25              1.  Defendant Alvarez's Motion for Summary Judgment as to Plaintiff Alfonso's §

26                  1983 Claim for Retaliation in Violation of the First Amendment

27                 Defendant Alvarez moves for summary judgment as to Alfonso's eighth cause of action

28         brought under § 1983 for retaliation in violation of the First Amendment, on the grounds that it is

                                                        5

undisputed that he, Alvarez, lacked any employment relationship with Alfonso and therefore could not have subjected Alfonso to an adverse employment action.

When analyzing a claim of First Amendment retaliation against an employee, the Ninth Circuit has said a plaintiff must initially show the following: "(1) he was subjected to an adverse employment action . . ., (2) he engaged in speech that was constitutionally protected because it touched on a matter of public concern and (3) the protected expression was a substantial motivating factor for the adverse action." *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 976 (9th Cir. 2002) (citing *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000)). If the employee carries this initial burden, the burden then shifts to defendant to demonstrate either of the following: (1) under the balancing test established by *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563 (1968), defendant's legitimate administrative analysis outweighed plaintiff's First Amendment rights; or (2) under the mixed motive analysis in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), defendant would have reached the same decision even in the absence of the plaintiff's protected conduct. *Id.* at 976–77.

Defendant Alvarez argues that Alfonso cannot meet his initial burden in this regard because defendant Alvarez did not have an employment relationship with Alfonso, and therefore could not have taken any adverse employment action against Alfonso. (Doc. No. 132-1 at 7.) Defendant contends that it is undisputed that at all relevant times, Alfonso was not employed by either Alvarez or PUSD. (Doc. No. 132-3 at ¶ 9.)

Alfonso counters that there is "substantial evidence that [defendant Alvarez] orchestrated the termination of Plaintiff," and that the YCA defendants "acted at the direction and in conspiracy with Alvarez and Parlier Unified." (Doc. No. 141 at 6.) However, the only evidence Alfonso provides to support this contention is a citation to his own declaration in which he states, "[w]hile Plaintiff Alfonso Padron was not formally employed by Alvarez, everyone knew that Alvarez was the boss and that he called the shots." (Doc. Nos. 141-2 at ¶ 4; 141-3 at ¶ 9.)

This statement in plaintiff Alonso's declaration is insufficient to raise a factual dispute sufficient to defeat a motion for summary judgment. Although a "district court may not disregard

a piece of evidence at the summary judgment stage solely because of its self-serving nature," a district court may disregard a self-serving declaration when it "states only conclusions and not facts that would be admissible evidence." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n.5, 1061 (9th Cir. 2002) (finding that the district court properly disregarded a declaration that included facts beyond the declarant's personal knowledge and did not indicate how she knew the facts to be true); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

Here, as indicated, Alfonso's declaration simply states that "everyone knew that Alvarez was the boss and that he called the shots." (Doc. No. 141-2 at ¶ 4.) This is a conclusory statement, lacking any detailed facts or other supporting evidence. Alfonso's declaration is insufficient to raise a triable issue of fact regarding his employment relationship with Alvarez. Because Alfonso cannot establish that Alvarez subjected him to an adverse employment action, defendant Alvarez's motion for summary judgment as to Alfonso's § 1983 claim will be granted. The court therefore need not consider Alvarez's additional arguments that the suit brought against him in his individual capacity is redundant and that he is entitled to qualified immunity.

       2.   <u>The YCA Defendants' Motion for Summary Judgment as to Plaintiff Alfonso's §</u> <u>1983 Claim for First Amendment Retaliation</u>

The YCA defendants separately move for summary judgement as to Alfonso's § 1983 cause of action against them, disclaiming liability under § 1983 because they are not state actors. (Doc. No. 136-1 at 6–8.) The YCA defendants argue that even if they were considered state actors, they would be entitled to summary judgment because there is no evidence before the court suggesting that Alfonso's protected conduct was a motivating factor in his termination. (*Id.*)

42 U.S.C. § 1983 provides that "[e]very person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." A defendant acts under

color of state law if he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quotation omitted).

Typically, action under color of state law is taken by a public agency or officer. *Taylor v. First Wyo. Bank, N.A.*, 707 F.2d 388, 389 (9th Cir. 1983). In certain circumstances, however, private individuals may qualify as state actors when: (1) the claimed deprivation "resulted from the exercise of a right or privilege having its source in state authority"; and (2) under the facts of the particular case, the private party may be appropriately characterized as a state actor. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008) (quoting *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 939 (1982)). Courts have applied several tests to determine whether a private entity may constitute a state actor, including when the private entity acts in concert with the state ("Joint Action Test") or when the private entity engages in conduct that is traditionally reserved exclusively to the state ("Public Function Test"). *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997). While these tests aid in the analysis, "there is no specific formula for defining state action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 836 (9th Cir. 1999) (quoting *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983) (quotation omitted)). The inquiry is necessarily fact specific, and courts must examine whether there is a sufficiently close nexus between the state and the challenged conduct to fairly attribute the conduct to the state. *Id.*

Here, Alfonso asserts that the YCA defendants can be held liable under § 1983 because they acted in concert with the district defendants. (Doc. No. 143 at 3.) Alfonso claims that the evidence "supports the allegation that Defendant Lara and Defendant Youth Centers of America acted at the direction and in conspiracy with Alvarez and Parlier United." (*Id.* at 3–4.) Yet plaintiff cites no evidence in support. In fact, plaintiff's response to the YCA defendants' separate statement of undisputed material facts provides no objection to the YCA defendants' assertion that YCA "is not a government entity and is governed by a volunteer board that does not include government entities or persons acting on their behalf." (*See* Doc. 143-2 at ¶ 16.) Because there is no evidence before the court on summary judgment from which a jury could conclude that the YCA defendants were state actors, Alfonso cannot maintain a § 1983 cause of action

against them. The YCA defendants' motion for summary judgment as to this cause of action will be granted.

### 3. YCA Defendants' Motion for Summary Judgment as to Plaintiff Alfonso's IIED Claim

Alfonso brings a claim against the YCA defendants for intentional infliction of emotional distress ("IIED") by taking actions to approve, ratify, and administer the personnel actions requested by defendant Alvarez in violation of Alfonso's rights to engage in free speech and political association. (Doc. No. 67 at ¶¶ 95–96.)

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show: (1) outrageous conduct by the defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress. *Argawal v. Johnson*, 25 Cal.3d 932, 946 (1979). To satisfy the first prong of outrageousness, the conduct must be so extreme that it exceeds all bounds tolerated in a civilized society. *Nally v. Grace Community Church*, 47 Cal.3d 278, 300 (1988); *Kiseskey v. Carpenters' Trust for So. Cal.*, 144 Cal.App.3d 222, 231 (1983). The YCA defendants contend that they are entitled to summary judgment as to Alfonso's IIED claim because, as a matter of law, his termination was not "outrageous." (Doc. No. 136-1 at 4–5.)

California courts have held that "personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like" do not constitute outrageous conduct beyond the bounds of human decency. *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996) ("Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society."). Thus, a "simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Id.* Rather, if a personnel management decision is improperly motivated, "the remedy is a suit against the employer for discrimination." *Id.*

Numerous district courts in this circuit have applied the decision in *Janken* to foreclose IIED claims when the employer's conduct falls within the confines of a personnel management decision. *See, e.g.*, *Dupree v. Apple, Inc.*, No. 16-CV-00289-LHK, 2016 WL 4191653, at *7–8 (N.D. Cal. Aug. 9, 2016) (dismissing plaintiff's IIED claim because "complaints about his work schedule and ability to access Apple's training system fall clearly within the purview of personnel management actions"); *Gomez v. Rehabilitation*, No. CV-15-08877-MWF-JEM, 2016 WL 370692, at *4 (C.D. Cal. Jan. 29, 2016) ("*Janken* made clear . . . that an IIED claim cannot be based on 'hiring and firing' even when the supervisor acts with a discriminatory motive. Because the Complaint pleads no other conduct, and certainly no conduct falling outside of [defendant's] managerial duties, Plaintiff's IIED claims are patently deficient."); *Bradshaw v. Glatfelter Ins. Grp.*, No. 1:08-CV-01898-OWW-SMS, 2009 WL 1438265, at *4 (E.D. Cal. May 20, 2009) ("Plaintiff has not alleged any facts that give rise to a reasonable inference that Defendants' conduct was anything other than management-level decisions. . . . Under *Jankin* [sic] and its progeny, such decisions are 'personnel management decisions' and cannot be considered 'extreme or outrageous' for purposes of establishing IIED liability.").

Alfonso's IIED claim against the YCA defendants is premised solely on his termination—a clear personnel management decision. Given the authority cited above, the YCA defendants' motion for summary judgment as to Alfonso's IIED claim will be granted.

### 4. Defendant YCA's Motion for Summary Judgment as to Plaintiff Alfonso's Wrongful Termination Claim

Alfonso's twelfth cause of action against defendant YCA is for wrongful termination in violation of public policy. In this regard, Alonso alleges that he created a campaign flyer endorsing a candidate not supported by Alvarez. (Doc. No. 67 at ¶¶ 214, 217.) According to Alfonso, once Alvarez discovered the flyer, Alvarez directed Lara to terminate Alfonso, and Alfonso was in fact terminated. (*Id.* at ¶ 18.)

To prevail on a claim for wrongful discharge, a plaintiff must show that: (1) an employer-employee relationship existed; (2) plaintiff's employment was terminated; (3) the violation of public policy was a motivating factor for the termination; and (4) the termination was the cause of

plaintiff's damages. *Haney v. Aramark Unif. Servs., Inc.*, 121 Cal. App. 4th 623, 641 (2004).

YCA does not dispute that the parties had an employer-employee relationship or that they took an adverse employment action against Alfonso. YCA moves for summary judgment on the grounds that Alfonso cannot establish the third prong of his claim, that is, that the violation of public policy was a motivating factor for Alfonso's termination. (Doc. No. 136-1 at 9.) YCA argues that the violation of public policy could not have been a factor in Alfonso's termination because it was not even aware of Alfonso's authorship of a campaign flyer when it terminated him. (*Id.*)

In his opposition, Alfonso refutes YCA's lack of awareness of the campaign flyers. (Doc. No. 143 at 5.) Alfonso counters that when he was terminated by YCA Executive Director Pelayo, Pelayo told him that he did not know why Alfonso was being fired, and that defendant Lara had made the decision. (Doc. No. 143-2 at ¶ 39.) Although defendant Lara had left his position at YCA months before Alfonso was terminated, Alfonso claims that Lara "was still calling the shots" (Doc. No. 143-3 at ¶ 3), and played a "substantial role" in his termination. (Doc. No. 143 at 4.) Alfonso alleges that a "chain of emails" demonstrates that Lara was the decisionmaker regarding Alfonso's firing. (Doc. No. 143-3 at ¶¶ 3, 6.)

Alfonso's bare assertions that Lara was the decisionmaker are unsupported by any evidence presented to the court on summary judgment. The chain of emails Alonso refers to was not provided to the court as an exhibit to plaintiff's opposition to defendants' motion for summary judgment. Because Alfonso has offered no evidence to refute Pelayo's contention that he lacked awareness of Alfonso's engagement in protected activity, Alfonso has failed to raise a genuine issue as to YCA's motivation for his termination. As such, YCA's motion for summary judgment as to Alfonso's wrongful discharge claim will be granted.

### B. Plaintiff Elida Padron

The court turns next to defendant Alvarez's motion for summary judgment as to plaintiff Elida Padron's [hereinafter "Elida"] eighth cause of action. The parties offer the following undisputed facts in connection with Elida's § 1983 claim for violation of her rights under the First and Fourteenth Amendments. Elida was hired as a consultant by PUSD Board of Trustees in

January 2013 to establish an attendance department for the district.  (Doc. No. 133-7; Doc. No. 133-8 at 4–5.)  The employment agreement signed by Elida initially provided for a term of February 1, 2013 to June 30, 2013.  (Doc. No. 133-7.)  Her employment agreement was thereafter renewed for the 2013–2014 school year.  (Doc. No. 133-8 at 14:20–25.)

The circumstances regarding the end of Elida's employment are disputed by the parties.  Elida contends that she was terminated from her position in retaliation for supporting political candidates that Alvarez opposed, and for declining Alvarez's request that she "spy on one of her friends . . . for political purposes."  (Doc. No. 142-2 at ¶ 9.)  In contrast, Alvarez contends that Elida was not terminated, but that her contract was allowed to expire pursuant to its terms because the objectives of Elida's contract had been achieved during the contract term, the attendance program had been established, and Elida's services were simply no longer needed.  (Doc. No. 133-3 at ¶ 12.)

1.  Defendant Alvarez's Motion for Summary Judgment as to Plaintiff Elida's § 1983 Claim for First Amendment Retaliation

As the court explained above, in analyzing a claim of retaliation against an employee in violation of the First Amendment, a plaintiff must initially show the following:  "(1) he was subjected to an adverse employment action . . ., (2) he engaged in speech that was constitutionally protected because it touched on a matter of public concern and (3) the protected expression was a substantial motivating factor for the adverse action."  *Ulrich*, 308 F.3d at 976.  Here, defendant Alvarez moves for summary judgment on the grounds that there is no evidence before the court that that Elida suffered an adverse employment action or that the failure to renew Elida's contract was substantially motivated by her engagement in protected conduct.  (Doc. No. 133-1 at 7.)

The court considers first whether evidence was presented on summary judgment that Elida suffered an adverse employment action.  Elida argues that defendant Alvarez made a separate oral agreement with her that her contract would be renewed as long as she performed her duties.  (Doc. No. 142 at 6.)  Specifically, Elida states in a sworn declaration that "[t]he defendants, specifically Alvarez, promised me I would have a job for years, as long as I was doing the job.  I estimated for them that my work would be a five year project.  I reasonably relied on those

12

promises and conducted myself accordingly." (Doc. No. 142-3 at ¶ 17.) Elida thus contends that her contract did not expire pursuant to its terms, but that Alvarez terminated her in breach of an oral agreement.

In reply, Alvarez argues that the statements contained in Elida's declaration contradict her earlier deposition testimony, at which time she testified that no one had made promises to her regarding her future employment:

> Q: Did anybody make any promises to you about future work?
>
> A: What do you mean promises to me?
>
> Q: Did anyone promise you that you would be given work for the 2014/2015 year?
>
> A: Like, "I promise you that you're going to get a job?"
>
> Q: Yes.
>
> A: No.
>
> Q: Did anybody promise you work for the 2015/2016 school year?
>
> A: Like I said, "I promise"? Like that, no.

(Doc. No. 133-8 at 52:11–22.)

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). A district court may "disregard 'sham' affidavits that contradict deposition testimony submitted solely to generate [an] issue of fact for summary judgment purposes." *Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 728 (9th Cir. 1997).

At the same time, however, the Ninth Circuit has advised that the "sham affidavit rule" must be applied with caution. *Van Asdale*, 577 F.3d at 998. There are thus two important limitations on a district court's discretion to disregard a sham affidavit. *Id.* First, the district court must make a factual determination that the contradiction was actually a "sham"; and second, the inconsistency between the deposition testimony and subsequent affidavit must be clear and unambiguous. *Id.* at 998–99. The non-moving party is not prohibited from elaborating on or

clarifying prior testimony and "minor inconsistencies that result from an honest discrepancy, mistake, or newly discovered evidence." *Id.* at 999.

Here, the court finds that both limitations are satisfied under the circumstances presented here. As noted above, Elida testified at her deposition that no one had promised her continued employment for the 2014/2015 school year or the 2015/2016 school year. (Doc. No. 133-8 at 52:11–22.) Yet Elida's declaration in opposition to the motion for summary judgment states, "The defendants, specifically Alvarez, promised me I would have a job for years, as long as I was doing the job." (Doc. No. 142-3 at ¶ 17.) Plaintiff has not clarified this inconsistency, provided any other evidence from which the court could resolve the inconsistency between these statements, or provided any further evidence raising a factual dispute regarding whether she was in fact terminated. Given the state of the evidence and the absence of an explanation by plaintiff, the court can only conclude that the portion of plaintiff's declaration regarding the promise of future employment is a sham. The court further finds that the inconsistency between her deposition testimony and subsequent declaration on this point is clear and unambiguous, and that the statement in her declaration must be stricken as a result.

Elida argues in the alternative, however, that even if she was not terminated from her employment, the non-renewal of her contract suffices as an adverse employment action for the purposes of her § 1983 claim. (Doc. No. 142 at 7.) Although the Ninth Circuit has not explicitly addressed this issue, it has suggested that non-renewal of a contract may constitute an adverse action to support a § 1983 claim for violation of free speech. *Cf. Black v. Brewer*, 302 Fed. App'x 669, 670 (9th Cir. 2008) (dismissing plaintiff's § 1983 claim that the non-renewal of her employment contract was in retaliation for the exercising of her right to free speech, but only on the ground that plaintiff did not engage in speech).[2] Moreover, other circuit courts have determined that non-renewal of an employment arrangement does constitute an adverse action in the context of discrimination statutes. *Leibowitz v. Cornell Univ.*, 584 F.3d 487 (2d Cir. 2009) (holding that "a non-renewal of an employment contract itself is an adverse employment action");

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

*Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 320 (3d Cir. 2008) ("The failure to renew an employment arrangement, whether at-will or for a limited period of time, is an employment action, and an employer violates Title VII if it takes an adverse employment action for a reason prohibited by Title VII."); *Carter v. Univ. of Toledo*, 349 F.3d 269, 270–71 (6th Cir. 2003) (reversing district court's grant of summary judgment in the employer's favor on plaintiff's Title VII claim in connection with employer's failure to renew her employment contract); *Minshall v. McGraw Hill Broadcasting Co., Inc.*, 323 F.3d 1273, 1279–82 (10th Cir. 2003) (finding sufficient evidence that an employer unlawfully discriminated against an employee in deciding not to renew his contract); *Mateu-Anderegg v. School Dist. of Whitefish Bay*, 304 F.3d 618 (7th Cir. 2002) (finding it "undisputed . . . that she suffered an adverse employment action" where plaintiff challenged the non-renewal of her contract). The court sees no reason to distinguish between the adverse action requirement in claims brought under these discrimination statutes and § 1983. The court therefore finds that, based upon the evidence before the court on summary judgment, a reasonable factfinder could conclude that Elida suffered an adverse employment action when her contract was not renewed.

Defendant Alvarez next argues that Elida cannot demonstrate that her protected First Amendment conduct was a substantial motivating factor in the non-renewal of her contract. (Doc. No. 133-1 at 7.) Alvarez contends that Elida's contract was not renewed for the 2014–2015 school year because her services were no longer needed. (*Id.*) According to Alvarez, the attendance department had been established, Elida had trained the individual who would be taking over the department's operations, and truancy rates were improving. (*Id.*)

Elida refutes this characterization, claiming that the goals of the program had not yet been met and would require several more years of work, and that her successor was not prepared or qualified to take over her functions. (Doc. No. 142-3 at ¶ 28.) In her declaration, Elida also states that another PUSD employee, Nunie Torres, informed her that defendant Alvarez was "very upset" with Elida for not taking a job he had offered her to "spy on other employees who [sic] he thought had political interests opposed to him." (*Id.* at ¶ 10.) According to Elida, Mr. Torres told her that defendant Alvarez had asked him "if he could control [Elida] politically" because Elida

15

was not "siding with his Board candidates." (*Id.*)

Elida's declaration is insufficient to raise a genuine dispute as to the reasons for the non-renewal of her contract. Elida has come forward with no evidence to support her assertion that the attendance program still needed her unique skills or services. In fact, that assertion is belied by her own deposition, where she testified that "the bulk of establishing . . . an attendance department was taken care of the first year." (Doc. 133-8 at 16:2–3.) When asked what work she had anticipated performing in 2014 and 2015, Elida testified at her deposition as follows: "It was basically the same tasks and duties. . .. It was all the same services, except the creation of fliers, brochures, all of the written stuff, because . . . we had already done it the year before." (*Id.* at 17:4–11.)

Furthermore, Elida's recounting of the conversation with PUSD employee Nunie Torres does not raise a genuine dispute of material fact. First, defendant Alvarez's objection to the court's consideration of this hearsay is well taken. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Loomis v. Cornish*, 836 F.3d 991, 996–97 (9th Cir. 2016) (reliance on hearsay insufficient to survive summary judgment); *Kim v. United States*, 121 F.3d 1269, 1276–77 (9th Cir. 1997) (affirming the grant of summary judgment in part "[b]ecause the affidavit was not based on personal knowledge and because it relied on inadmissible hearsay testimony, the district court properly rejected it"); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) ("[O]nly admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."). Second, even setting aside defendant's hearsay objection to this evidence, Elida has failed to offer any evidence establishing when this alleged conversation took place, and it is therefore entirely unclear whether it had any connection to the non-renewal of Elida's employment contract in June 2014. The fact that Alvarez was angry with Elida at some point in time does not amount to evidence that he later chose not to renew her employment contract in retaliation for her engagement in protected First Amendment conduct.

Elida has not come forward on summary judgment with evidence sufficient to raise a genuine issue as to the reason(s) for the non-renewal of her employment contract. Based upon the

16

evidence presented on summary judgment, or the lack thereof, no reasonable factfinder could conclude that the non-renewal of her contract was substantially motivated by her protected First Amendment conduct. The court will therefore grant defendant Alvarez's motion for summary judgment as to Elida's § 1983 claim. Given this ruling, the court need not address defendant's additional arguments for summary judgment based on redundancy and qualified immunity.

### C. Plaintiff Gudelia Sandoval

The court turns next to plaintiff Gudelia Sandoval. The parties offer evidence establishing the following in connection with Sandoval's eighth cause of action under § 1983 for violation of the First and Fourteenth Amendments and ninth cause of action under § 1983 for violation of due process. Plaintiff Sandoval was the principal at Chavez Elementary School from August 2012 to October 2014. (Doc. No. 135-2 at ¶ 10.) On or about September 2014, a parent made a complaint to Sandoval about a teacher at Chavez Elementary who "handl[ed] her son wrongly." (*Id.* at ¶ 14.) Following the incident, Sandoval met with the parent, the student, and the teacher to discuss the incident. (Doc. No. 150-5 at ¶¶ 11–12.) Based on these meetings, Sandoval concluded that the teacher had tapped the student, who was hearing impaired, on the shoulder to get his attention. (*Id.* at ¶ 13.) Sandoval concluded there was no inappropriate physical contact and did not report the incident to PUSD or other authorities. (*Id.*; Doc. No. 150-1 at ¶¶ 17–18.)

The parent thereafter made a complaint to PUSD alleging that Sandoval had failed to provide a satisfactory explanation as to the alleged physical contact between the teacher and her son. (*See* Doc. No. 135-9 at 2.) Sandoval disputes the authenticity of this complaint, alleging that the parent was "coerced" by relatives of defendant Alvarez to file the complaint. (Doc. No. 150-1 at ¶ 17.) As a result of the parent complaint, PUSD contracted with an independent investigator in October 2014 to investigate the allegations. (Doc. No. 135-9.) Pending that investigation, on October 29, 2014, Sandoval was placed on administrative leave with full pay. (Doc. No. 135-2 at ¶ 19.)

The parties dispute the reasons why Sandoval was placed on administrative leave. Defendant Alvarez argues that the administrative leave was justified and non-retaliatory because plaintiff Sandoval did not meet separately with the teacher to discuss appropriate and

inappropriate physical contact with students, did not report the incident to the PUSD office, and did not file a suspected child abuse report based on the parent's complaint. (Doc. No. 135-3 at ¶¶ 15–18.) Sandoval, on the other hand, claims that there was no need to report the incident or file a suspected child abuse report because there was no child abuse to report. (Doc. No. 150-1 at ¶ 18.) Sandoval argues that she met with the student and the student's parent in September 2014, at which time the student confirmed that his teacher had tapped him on his shoulder to get his attention. (*Id.*) Sandoval argues that the purported child abuse incident was merely a pretext for Alvarez to retaliate against her, because of Sandoval's association with her husband, Juan Sandoval, her refusal to join Alvarez's PUSD Board committee, and her open support for PUSD Board candidates that Alvarez did not support. (*Id.* at ¶¶ 9, 22.)

      1.   Defendant Alvarez's Motion for Summary Judgment as to Plaintiff Sandoval's § 1983 Claim for First Amendment Retaliation

Defendant Alvarez moves for summary judgment as to plaintiff Sandoval's § 1983 claim for violation of the First and Fourteenth Amendments, arguing that Sandoval cannot show that her placement on administrative leave was substantially motivated by her political associations. (Doc. No. 135-1 at 9.) As discussed above, to prevail on a retaliation claim such as this, a plaintiff must show that "(1) he was subjected to an adverse employment action . . ., (2) he engaged in speech that was constitutionally protected because it touched on a matter of public concern and (3) the protected expression was a substantial motivating factor for the adverse action." *Ulrich*, 308 F.3d at 976.

In support of his motion for summary judgment, Alvarez submits various documents, including: (1) an October 29, 2014 letter from Alvarez to Sandoval notifying Sandoval that she was to be placed on paid administrative leave effective immediately, "to permit the District to investigate complaints and concerns that have been lodged against you related to failures to fulfill your mandated child abuse reporting duties, failures to follow employment directives, and failures to complete job duties" (Doc. No. 135-8); (2) a January 13, 2015 report by independent investigator Jeffrey Hollis summarizing the findings of his investigation into "allegations of a teacher causing harm to a student, the Principal failing to report the incident to Parlier Unified

18

School District . . . , and the Principal violating directives and/or District policy in executing her duties" (Doc. No. 135-9); and (3) a February 5, 2015 letter from Deputy Superintendent Edward Lucero to Sandoval summarizing the investigation and concluding that Sandoval's conduct "violates the District's policies regarding complaints against employees . . . and complaints of bullying." (Doc. No. 135-11.) According to Alvarez, because Sandoval cannot establish that her placement on administrative leave was motivated by anything other than her violation of PUSD Board policy, summary judgment as to Sandoval's First Amendment claim should be granted in his favor.

Plaintiff Sandoval opposes the summary judgment motion, claiming that her association with her husband and her participation in a political committee that directly challenged Alvarez were substantial motivating factors in Alvarez's decision to place her on administrative leave. (Doc. No. 150 at 9–10.) Sandoval points to several facts that she argues create a genuine dispute as to Alvarez's motivations. First, Sandoval claims that, in August 2014, months before she was actually placed on administrative leave, Alvarez threatened to place her on administrative leave for not purchasing dinner tickets to a fundraiser for candidates that Alvarez supported. (*Id.*; Doc. No. 150-5 at ¶ 7.) Second, Sandoval offers a June 2014 Request for Civil Restraining Order filed against Alvarez by her husband Juan Sandoval as evidence that she feared harassment and retaliation by Alvarez. (Doc. No. 150 at 10; Doc. No. 150-7.) Third, she presents a declaration by her husband, Juan Sandoval, stating his belief that the student's parent "was manipulated by Blanca Alvarez and Raul Alvarez, the family members of Defendant Gerardo Alvarez, to allege an unsubstantiated complaint of abuse and further the retaliatory motives of Defendant Gerardo Alvarez against Gudelia Sandoval." (Doc. No. 150 at 10; Doc. No. 150-6 at ¶ 15.) Finally, Sandoval identifies an incident that took place in January 2015 in which the principal of Benavidez Elementary School was accused of inappropriately grabbing a child, but was not placed on administrative leave during the subsequent investigation by school officials. (Doc. No. 150-5 at ¶ 23.)

The court finds that much of this evidence is insufficient to raise a genuine issue of fact as to the reason for Sandoval's placement on administrative leave. Sandoval's recounting of

Alvarez's prior threat, even if true, does not contradict Alvarez's claim that she was ultimately placed on administrative leave months later because of intervening events. The Request for Civil Restraining Order relied upon by Sandoval also fails to raise a genuine issue of material fact. The Request was filed by Juan Sandoval, not Gudelia Sandoval, and the allegations in the document relate almost exclusively to Juan Sandoval.[3] (Doc. No. 150-7 at 4–9.) At most, the Request provides some evidence of plaintiff Sandoval's fear of harassment, but it does not contradict defendant's explanation that Sandoval was placed on administrative leave due to her failure to report alleged child abuse.

The declaration submitted by plaintiff's husband, Juan Sandoval, also fails to raise a genuine dispute of material fact. (Doc. No. 150-6.) In his sworn declaration, Juan Sandoval attests that he spoke with the student's parent regarding the complaint of inappropriate physical contact between the student and the teacher. (*Id.* at ¶ 12.) In that conversation, the parent stated that "El Director" wrote the complaint, which Juan Sandoval understood to refer to Raul Alvarez, an employee of PUSD and the brother of defendant Gerardo Alvarez. (*Id.*) In his declaration, Juan Sandoval states that the parent "at no time indicated that she was the author or proponent of the alleged complaint." (*Id.* at ¶ 14.) The declaration concludes that, "[b]ased on my discussion with [the student's parent], I believe [the student's parent] was manipulated by Blanca Alvarez and Raul Alvarez, the family members of Defendant Gerardo Alvarez, to allege an unsubstantiated complaint of abuse and further the retaliatory motives of Defendant Gerardo Alvarez against Gudelia Sandoval." (*Id.* at ¶ 15.) Even setting aside defendant's hearsay objection to this declaration, the conclusions expressed therein are entirely speculative. There are no facts, only conjecture, that lead Juan Sandoval to identify Raul Alvarez as having orchestrated

/////

/////

/////

---

[3] The only apparent reference to Gudelia Sandoval in Juan Sandoval's Request for Restraining Order is the conclusory allegation that "Both Gudelia and Sandra [Ortiz] have already been harassed by Gerardo Alvarez, and will continue to do so even more when this harassment claim is submitted." (Doc. No. 150-7 at 4.)

the parent complaint.[4]  There are furthermore no facts, only Juan Sandoval's "belief," that the parent "was manipulated" by defendant Alvarez's family members into alleging an "unsubstantiated complaint of abuse." (*Id.*)  These conclusory allegations do not establish the existence of a disputed issue of fact sufficient to defeat summary judgment. *Nelson v. Pima Cmty. College Dist.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.") (citation omitted); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) ("[C]onclusory allegations unsupported by factual data are insufficient to defeat [defendants'] summary judgment motion").

Plaintiff Sandoval further attests in her sworn declaration that in January 2015, a few months after she was placed on administrative leave, the principal of Benavidez Elementary School was accused of inappropriately grabbing a student. (Doc. No. 150-5 at ¶ 23.)  According to Sandoval, the incident involving the other principal was even "more egregious" than that of the teacher at Chavez Elementary School because the principal himself was accused of being the perpetrator. (Doc. No. 150 at 10–11.)  Yet, according to Sandoval, the Benavidez Elementary School principal was permitted to remain in his position and did not suffer any adverse employment action. (Doc. No. 150-5 at ¶ 23.)

Defendant objects that the evidence concerning another PUSD principal lacks foundation or any explanation as to Sandoval's personal knowledge of the incident. (Doc. No. 158 at 4.)  This objection is well-taken.  It is at the very least unclear from Sandoval's declaration whether she has personal knowledge of the incident.  Indeed, the more reasonable inference therefrom is that Sandoval had merely been advised of it by others, in which case this statement would be inadmissible hearsay.  Under similar circumstances the Ninth Circuit has observed:

> The Menkus affidavit appears inadequate under Rule 56(e).  Not made on personal knowledge, it did not set forth facts that would be admissible in evidence.  It is clear from the affidavit that Menkus was not personally involved in any of the disciplinary suspensions, and

---

[4]  In fact, Juan Sandoval's declaration never states that the parent identified Raul Alvarez by name.  Rather, the parent "described the man as tall, medium build, light complexion with reddish cheeks." (*Id.* at ¶ 11.)  From this vague description alone, Juan Sandoval concludes, "I understood [the parent] as describing Raul Alvarez, Defendant Gerardo Alvarez' [sic] brother, husband to Mrs. Blanca Alvarez, and employee of Parlier Unified School District." (*Id.*)

that he did not personally review any business records containing information regarding such disciplinary suspensions. Menkus instead relied on information from (unsworn) departmental personnel officers, and the source of these officers' information is unclear. Rather than set forth facts that would be admissible in evidence, the affidavit was instead based on inadmissible hearsay.

*Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001); *see also Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1251 (C.D. Cal. 2003) ("Declarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment."). Although personal knowledge can be inferred from a declarant's position, *see In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000), there can be no reasonable inference that Sandoval, by virtue of her position as the principal of Chavez Elementary, would have personal knowledge of an accusation made against the principal at another school, where the accusation allegedly did not result in any disciplinary action. This evidence must therefore be disregarded by the court on summary judgement.

Nonetheless, the court finds that other evidence presented on summary judgment is sufficient to establish a disputed issue of material fact regarding Alvarez's motivations for placing Sandoval on administrative leave. In the court's view, the central dispute in this regard is whether Sandoval appropriately addressed the complaint made by a parent against a teacher at Chavez Elementary for "handling her son wrongly." (Doc. No. 150-1 at ¶ 14.) Alvarez argues that it is undisputed that Sandoval did not meet separately with the teacher in question to discuss what was and was not appropriate physical contact, did not report the incident to the PUSD Office, and did not file a suspected child abuse report based on the incident. (Doc. No. 135-3 at ¶¶ 15–18.) Alvarez argues that it is undisputed that Sandoval's failure to act was a violation of Board Policy/Administrative Regulation 1312.1, which provides that "[a]ny complaint of child abuse or neglect alleged against a district employee *shall* be reported to the appropriate local agencies in accordance with law, Board policy and administrative regulation." (Doc. No. 135-1 at 12; Doc. No. 135-7.)

The court observes, however, that defendant's evidence does not eliminate the factual dispute surrounding Sandoval's purported violation of Board Policy/Administrative Regulation

22

1312.1.  As submitted to the court, Board Policy/Administrative Regulation 1312.1 does not

provide a definition of "child abuse or neglect," and it is not clear to the court whether *any*

complaint of physical contact between a teacher and a student constitutes "child abuse" such that

it would trigger the reporting requirement.  Indeed, in opposing summary judgment, Sandoval

argues that she did not report the "child abuse" allegation to PUSD or other local authorities

"because there was no child abuse to report."  (Doc. No. 150-1 at ¶ 18.)  In her sworn declaration,

Sandoval states that upon being notified of the parent complaint, she met with the parent and the

student on September 26, 2014, at which time the student confirmed that his teacher had merely

"tapped his shoulder to get his attention due to his hearing impairment while he was facing away

from her."  (Doc. No. 150-5 at ¶ 11.)  Later, on September 30, 2014, Sandoval met with the

teacher, the parent, the student, and a union representative, and again confirmed with all parties

that the teacher had simply tapped the student's shoulder to get his attention.  (*Id.* at ¶ 13.)

Sandoval therefore concluded that no inappropriate physical contact had occurred.  (*Id.*)  If this

evidence were to be believed, Board Policy/Administrative Regulation 1312.1 does not expressly

provide that a teacher tapping a student on the shoulder to get his attention is an event that must

be reported to PUSD or other agencies.  It therefore remains disputed whether Sandoval in fact

failed to comply with PUSD Board policy.  Based upon the evidence, a reasonable factfinder

could conclude that Sandoval did not in fact violate Board policy regarding the reporting of child

abuse.

   Alvarez briefly mentions other issues warranting action against Sandoval in addition to

the purported failure to report child abuse, including problems with "cleanliness of facilities,

bullying amongst the students, and supervision of teachers and their curriculum, standards and

methods."  (Doc. No. 135-1 at 12; Doc. No. 150-17.)  However, the letter notifying Sandoval of

her placement on administrative leave makes no mention of any of these other issues, and the

subsequent investigation undertaken by PUSD appears to relate solely to the alleged failure to

report child abuse.  (*See* Doc. Nos. 135-8, 135-9, and 135-11.)  A reasonable factfinder could

conclude that these other issues now identified by Alvarez are simply post-hoc justifications for

placing Sandoval on administrative leave.  Based on the evidence, a reasonable factfinder could

conclude that the alleged failure to report child abuse was the only proffered reason for Sandoval being placed on administrative leave, and that the alleged failure to report child abuse was pretextual because Sandoval did not fail to report child abuse. The court therefore finds that Sandoval has come forward with evidence that could be found to raise an inference of improper or retaliatory motive on the part of Alvarez, and that this disputed issue of fact must be resolved by a factfinder at trial.

Having found a genuine dispute of material fact, the court now turns to Alvarez's additional arguments that as to Sandoval's §1983 claim, he is entitled to qualified immunity and that the suit against him in his individual capacity is redundant. Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. *Jeffers v. Gomez,* 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow*, 457 U.S. at 818). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *accord Pearson v. Callahan*, 555 U.S. 223, 236–42 (2009) (holding that courts need not analyze the two prongs of the analysis announced in *Saucier* in any particular order). Here, Alvarez argues that even if the facts alleged demonstrate that Sandoval suffered a violation of her First Amendment rights, Alvarez "could reasonably have believed and did believe it was lawful to place Sandoval on administrative leave in order to allow the District an opportunity to investigate the parent complaint and to address concerns relating to her failure to follow employment directives and complete job duties." (Doc. No. 135-1 at 12.)

Above, the court has determined that it remains a disputed issue of fact whether Sandoval in fact failed to report child abuse in violation of PUSD Board policy, and whether that purported failure to report child abuse was the true motivation behind Sandoval's administrative leave, rather than mere pretext for a retaliatory motive. At the time of Sandoval's placement on administrative leave, "an individual had a clearly established right to be free of intentional retaliation by government officials based upon that individual's constitutionally protected

expression." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1319 (9th Cir. 1989); *see also Allen v. Scribner*, 812 F.2d 426, 436 (9th Cir. 1987) (material issue of fact regarding whether defendants' actions were based on retaliatory motive precluded summary judgment on qualified immunity grounds).  Accordingly, Alvarez is not entitled to summary judgment on qualified immunity grounds.

Alvarez's argument that he is entitled to summary judgment because Sandoval's individual capacity suit against him is redundant must also be rejected.  Alvarez posits that "[t]here are no allegations consistent with an individual capacity suit against Superintendent Alvarez," because the alleged adverse actions taken against Sandoval were taken "in connection with his official duties."  (Doc. No. 135-1 at 10.)  This argument confuses the capacity in which a defendant is sued with the capacity in which the defendant was acting when the alleged constitutional violation occurred.  *See Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990) ("Clearly, under § 1983, a plaintiff may sue a state officer in his individual capacity for alleged wrongs committed by the officer in his official capacity.").  To state a cause of action against a defendant in his individual capacity, the plaintiff "must allege that the defendant knew of or participated in activities connected to the alleged § 1983 violations."  *Ortez v. Wash. Cty.*, 88 F.3d 804, 809 (9th Cir. 1996); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").

Plaintiff Sandoval has sufficiently stated a cause of action against defendant Alvarez in his individual capacity.  Sandoval alleges that Alvarez personally made the decision to place her on administrative leave in retaliation for her engagement in protected conduct.  Indeed, Alvarez's signature is on the letter notifying Sandoval of her placement on administrative leave.  (*See* Doc. No. 135-8.)  Defendant Alvarez's motions seeking judgment in his favor as to Sandoval's First Amendment retaliation claim and individual capacity suit[5] against him will therefore be denied.

/////

/////

---

[5]  Although Alvarez argues for dismissal of this claim, that request has been brought by him in his motion for summary judgment or, in the alternative, summary adjudication.

### 2. Defendant Alvarez's Motion for Summary Judgment as to Sandoval's § 1983 Claim for Violation of Procedural Due Process

Defendant Alvarez also moves for summary judgment as to Sandoval's ninth cause of action for violation of procedural due process. In that claim, Sandoval alleges that she was not provided with an opportunity to be heard prior to being placed on administrative leave, in violation of the due process clause of the Fourteenth Amendment. (Doc. No. 67 at ¶¶ 190, 196.) In moving for summary judgment, defendant Alvarez argues that Sandoval's ninth cause of action for procedural due process fails to state a cognizable claim because there is no cause of action directly under the United States Constitution. (Doc. No. 135-1 at 13–14.)

Sandoval clarifies in her opposition to summary judgment that her procedural due process claim is brought under § 1983. (Doc. No. 150 at 14.) In his reply, defendant Alvarez simply reiterates that there is no cause of action directly under the United States Constitution. (Doc. No. 158 at 5.) The court will construe Sandoval's procedural due process claim as being brought under § 1983, and will therefore reject Alvarez's motion for summary judgment based on his failure to state a cognizable claim argument.[6]

In the last paragraph of Alvarez's motion for summary judgment as to Sandoval's procedural due process claim, he argues that even if the court were to construe Sandoval's procedural due process claim as brought under § 1983, Alvarez would still be entitled to summary

_____

[6] Defendant Alvarez notes that the court previously dismissed Sandoval's ninth cause of action alleging a violation of procedural due process against defendant PUSD, finding that there was no cause of action directly under the United States Constitution. (Doc. No. 135-1 at 13.) Alvarez contends that the court's prior analysis "applies with equal force to Superintendent Alvarez." (*Id.*) Defendant's argument in this regard misconstrues the court's prior order. In discussing defendant PUSD's motion to dismiss, the court found that "[e]ven were the court to read the ninth cause of action as presenting a claim brought pursuant to § 1983, defendant PUSD nevertheless would be an improper defendant" because PUSD is an arm of the state for Eleventh Amendment purposes and is not a "person" subject to suit under § 1983. (Doc. No. 82 at 7.) That analysis is inapplicable here. The court construes Sandoval's due process claim against Alvarez as being brought under § 1983. So construed, Eleventh Amendment immunity does not apply to Alvarez since he is being sued here in his individual capacity. *Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir. 1988) ("[A]n action against a state official sued in his individual, rather than his official or representational, capacity is not barred by the eleventh amendment.") (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237–38 (1974)).

26

judgment because "he is a redundant defendant and/or entitled to qualified immunity." (Doc. No. 135-1 at 14.)

As explained above, the court has rejected Alvarez's argument that plaintiff has failed to adequately allege a claim against him in his individual capacity. Moreover, Alvarez cites to no evidence or legal authority in support of his claimed entitlement to qualified immunity on Sandoval's procedural due process claim.[7] Qualified immunity is an affirmative defense, and the burden of proving that defense lies with the official asserting it. *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 819 (1982)). "Where, as here, the *moving party* bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Id.* (citations omitted). Alvarez, therefore, bears the initial burden of establishing the absence of a genuine issue of fact on each issue material to his qualified immunity defense. He has failed to do so. Accordingly, Alvarez is not entitled to summary judgment on qualified immunity grounds as to Sandoval's due process claim. Alvarez's motion for summary judgment on that claim will therefore be denied.

### D. Plaintiff Luis Ramos

The court turns finally to plaintiff Luis Ramos. The evidence submitted by the parties on summary judgment establish the following regarding Ramos' eighth cause of action under § 1983 for violation of the First and Fourteenth Amendments. Plaintiff Luis Ramos began working for the non-profit Coalition for Rural Pueblos Economic Development ("CRPED") in 2007. (Doc. No. 151 at 3.) Ramos' duties included providing computer assistance at the Parent Resource Center at PUSD. (*Id.*) Beginning in 2011, Ramos obtained a second job as an employee of Community Union, where he provided computer training for adults. (Doc. No. 151-1 at ¶ 9; Doc.

---

[7] Defendant Alvarez contends that he is entitled to qualified immunity as to Sandoval's procedural due process claim "for the same reasons discussed above"—apparently, for the same reasons he contends that he is entitled to qualified immunity as to Sandoval's First Amendment retaliation claim. (Doc. No. 135-1 at 14.) Bare reference to his qualified immunity argument with respect to Sandoval's First Amendment claim will not suffice to raise the defense of qualified immunity with respect to Sandoval's procedural due process claim, given that the elements of each of these claims are distinct.

No. 134-8 at 9:23–10:8.)  The parties do not dispute that, at all relevant times, Ramos was not employed by either PUSD or defendant Alvarez.  (Doc. No. 151-1 at ¶ 9.)  Plaintiff Ramos contends, however, that at a regularly scheduled PUSD Board meeting in 2012, the Board approved Ramos as a PUSD volunteer.  (Doc. No. 151-17 at ¶ 8.)  In addition to his employment with CRPED and Community Union, Ramos volunteered with the PUSD's Parent Resource Center, where he provided computer training to parents as set out by an August 13, 2013 Memorandum of Understanding between PUSD and Community Union.  (Doc. No. 134-8 at 25:19–26:4; Doc. No. 151-8.)  Through Ramos' volunteer position, he was given keys to the Parent Resource Center and access to the PUSD computer and printer located in the Parent Resource Center.  (Doc. No. 134-10 at ¶ 4.)

On or about October 7, 2014, the PUSD technology director discovered political campaign flyers supporting PUSD board candidates on the computer in the Parent Resource Center.  (Doc. No. 151-1 at ¶ 12; Doc. No. 134-7.)  The same day, defendant Alvarez and Deputy Superintendent Edward Lucero confronted Ramos about the flyers.  (Doc. No. 134-10 at ¶ 5; Doc. No. 134-8 at 28:25–29:8.)  Ramos maintains that the flyers discovered were received by him as an attachment sent to his personal email account, and that he did not download, create, or modify the flyers on the PUSD computer in the Parent Resource Center.  (Doc. No. 151-1 at ¶ 13.)  Defendant Alvarez thereafter asked Ramos to turn in his keys and escorted Ramos off the PUSD premises.  (Doc. No. 134-1 at 4.)  In December 2014, Deputy Superintendent Lucero sent emails notifying the PUSD staff that Ramos had been banned from PUSD grounds.  (Doc. No. 151-7.)

The reason for Ramos' termination as a PUSD volunteer is disputed by the parties.  Defendant Alvarez claims that Ramos was banned from PUSD premises due to his misappropriation of district resources for "personal politics."  (*Id.* at 4; Doc. No. 134-10 at ¶ 5.)  Ramos, for his part, claims that the termination of his volunteer position was in retaliation for his engagement in political speech and association, because the campaign flyers endorsed PUSD board candidates that Alvarez did not support.  (Doc. No. 151-17 at ¶¶ 12–15.)

/////

/////

1.  <u>Defendant Alvarez's Motion for Summary Judgment as to Ramos' § 1983 Claim</u>
    <u>for First Amendment Retaliation</u>

Defendant Alvarez moves for summary judgment on plaintiff Ramos' § 1983 claim, arguing that Ramos cannot sustain his prima facie burden because he did not suffer an adverse employment action. (Doc. No. 134-1 at 7.) According to defendant Alvarez, Ramos was a volunteer with PUSD, had no employment relationship with the district, and therefore lacks standing to state a claim under § 1983. (*Id.*)

Defendant Alvarez fails, however, to provide any legal authority in support of this proposition. On the contrary, the Ninth Circuit has held that an individual's volunteer status is a valuable governmental benefit or privilege that cannot be denied on the basis of constitutionally protected speech. *Hyland v. Wonder*, 972 F.2d 1129, 1135 (9th Cir. 1992) ("*Hyland I*") ("[T]he relevant question, for purposes of Hyland's First Amendment claim, is not whether Hyland was a public employee, but rather whether the opportunity to serve as a volunteer constitutes the type of governmental benefit or privilege the deprivation of which can trigger First Amendment scrutiny. We hold that it does."). In *Hyland I*, the plaintiff worked as a volunteer for the San Francisco Juvenile Probation Department, but was immediately terminated once his supervisor discovered a memorandum written by plaintiff detailing numerous problems with the department. *Id.* at 1132. The plaintiff filed suit alleging that his termination was impermissible retaliation for protected speech, in violation of the First and Fourteenth Amendments. *Id.* The Ninth Circuit reversed the district court's dismissal of the plaintiff's First Amendment claim, holding that he had stated a claim for relief under § 1983. *Id.* at 1143. In reaching this decision, the court noted that:

> [t]he injury to position or privilege necessary to activate the First Amendment . . . need not rise to the level of lost employment. Retaliatory actions with less momentous consequences, such as loss of a volunteer position, are equally egregious in the eyes of the Constitution because a person is being punished for engaging in protected speech.

*Id.* at 1135. The court reasoned that even if a government volunteer is not paid, he or she "gains valuable experience and education in public administration and can make professional contacts." *Id.* at 1135–36. Volunteering moreover "provides an individual the satisfaction of making a

contribution, or giving something back, to society." *Id.* at 1136. Thus, the court in *Hyland I* concluded that the opportunity to volunteer constitutes a valuable governmental benefit or privilege, "no less than business permits and tax exemptions." *Id.*

Defendant Alvarez argues in his reply brief that *Hyland I* is inapposite here because Ramos "does not claim loss of his volunteer status as an adverse employment action; he claims something much more attenuated—the supposed loss of his employment at Community Union and CRPED." (Doc. No. 157 at 3.) The court, however, finds that the adverse consequences as characterized by Ramos are not attenuated at all. In opposing summary judgment, Ramos proffers emails from Edward Lucero in which Ramos' expulsion from PUSD grounds was publicized to all PUSD staff. (Doc. No. 67 at ¶ 76; Doc. No. 151-7.) In those emails, Lucero stated that Ramos had been "directed to stay away from any and all Parlier Unified School District campuses, events, and to have no contact with district personnel, students and/or parents." (Doc. No. 151-7.) As a result of being banned from PUSD grounds, Ramos attests that he could no longer work in the Parent Resource Center and could not perform his duties under the contract between Community Union and PUSD. (Doc. No. 151-17 at ¶ 24.) Ramos also declares that because the PUSD facilities serve as the location for various community events in Parlier, he was ostracized from the community and precluded from serving as a volunteer at community events. (*Id.* at ¶¶ 25–26.) These are precisely the kinds of valuable experiences and contacts that the Ninth Circuit contemplated in *Hyland I*. The court finds that Ramos' volunteer status does not preclude him from bringing a First Amendment retaliation claim under § 1983 based upon a claimed deprivation of governmental benefit or privilege.

The court turns next to defendant Alvarez's contention that summary judgment should be granted in his favor as to Ramos' § 1983 claim on qualified immunity grounds. (Doc. No. 134-1 at 8.) In evaluating a qualified immunity defense, the court first considers: (1) whether the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." *Saucier*, 533 U.S. at 201.

Here, Alvarez argues that, even assuming that Ramos suffered a deprivation of his constitutional rights, Alvarez "could reasonably have believed and did believe it was lawful to

30

prevent Plaintiff access to District resources after his misappropriation of the same." (Doc. No. 134-1 at 9.) In other words, Alvarez argues that the right at issue was not clearly established at the time of the alleged violation.

"A Government official's conduct violate[s] clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Put another way, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*; *see also Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional." (quoting *Saucier*, 533 U.S. at 202)). "This inquiry must be undertaken in light of the case's specific context, not as a broad general proposition." *Saucier*, 533 U.S. at 194; *accord Mullenix v. Luna*, 577 U.S. ___, 136 S. Ct. 305, 308 (2015); *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. May 12, 2017).

The court finds that, at the time of Ramos' termination in October 2014, it was clearly established that the First Amendment protects employees—including volunteers—when they lose a valuable government benefit in retaliation for their speech on a matter of public concern. *See Hyland v. Wonder*, 117 F.3d 405, 412 (9th Cir. 1997) ("*Hyland II*"). In *Hyland II*, the Ninth Circuit held that the district court erred in granting qualified immunity to defendants, because it was clearly established that "the government could not take action against an individual who, while not a salaried employee, received a valuable benefit analogous to employment, because that individual exercised his First Amendment right to speak out on a matter of public concern." *Id.* at 412 (citing *Havekost v. United States Dep't of the Navy*, 925 F.2d 316 (9th Cir. 1991)).

To the extent that defendant Alvarez claims that the misappropriation of PUSD resources, and not the content of the flyers, led to Ramos' termination, the court finds that Ramos has proffered substantial evidence to put this material fact in dispute. Ramos testified at his deposition in this case that when Alvarez came to collect Ramos' keys, Alvarez "said that he was not disappointed in me. He was disappointed in the candidates who were running for putting me

31

on the spot. He told me that he had found some fliers in my computer and . . . showed the fliers that they had pulled out of my computer on his phone." (Doc. 134-8 at 29:2–8.) Furthermore, Ramos contends that there was no policy prohibiting the production of political materials at the Parent Resource Center. (Doc. No. 151-17 at ¶ 12.) Indeed, Ramos had previously been asked by PUSD Board President Rick Maldonado and his committee group, which included defendant Alvarez, to create campaign flyers for candidates whom their committee endorsed. (*Id.*) The deposition testimony of defendant Alvarez and PUSD Board President Enrique Maldonado demonstrates that they were aware that Ramos had been involved in past board elections. (Doc. No. 141-11 at 31:22–25; Doc. No. 151-12 at 64:18–65:3.)

Moreover, following Ramos' termination, the Director of CRPED, Ben Benavidez, sent a letter to defendant Alvarez with the subject heading "RE: Luis Ramos banned from the district." (Doc. No. 151-4.) In this letter, Benavidez expressed concern about the "misunderstanding concerning Luis" and stated that "[i]t is very crucial that Luis has access to the Parent Resource Center to be able to accomplish all the services we provide the community and district programs." (*Id.*) Benavidez also stated in his letter the following:

> I am aware that the reason you banned Luis from having access to the district grounds has to do with his association with Mr. and Mrs. Sandoval, association of the opposing board member candidates to your slate, and a document that Alfonso Padron sent to his personal email requesting his assistance in designing a flyer. This is very disturbing because as you know board members Rick Maldonado, Joe Reyes, and you have required assistance from Luis in designing flyers, because we are a resource center for the community.

(*Id.*)

Considering the foregoing evidence, a reasonable jury could conclude that the finding that Ramos had engaged in the "misappropriation of PUSD resources" was simply a pretext for Alvarez's retaliation against Ramos for having engaged in protected activity. Viewing the evidence in the light most favorable to the non-movant, Alvarez has also failed to establish he is entitled to summary judgment on qualified immunity grounds. *See Allen*, 812 F.2d at 436 (material issue of fact regarding whether defendants' actions were based on retaliatory motive precluded summary judgment on qualified immunity grounds).

The court turns finally to defendant Alvarez's argument that any actions he took were only in connection with his official duties, and that the suit against him in his individual capacity is therefore redundant of the suit against him in his official capacity. (Doc. No. 134-1 at 7–8.) Again, this argument confuses the capacity in which a defendant is sued with the capacity in which the defendant was acting when the alleged constitutional violation occurred. *See Price*, 928 F.2d at 828. Plaintiff Ramos has sufficiently stated a cause of action against defendant Alvarez in his individual capacity. Ramos alleges that Alvarez confronted him about the campaign flyers and personally made the decision to terminate Ramos' volunteer position and ban Ramos from PUSD facilities because of the content of those flyers. *See Ortez*, 88 F.3d at 809; *Taylor*, 880 F.2d at 1045. Defendant Alvarez's motion for seeking judgment in his favor both as to Ramos' First Amendment retaliation claim and the individual capacity suit against him[8] will be denied.

## CONCLUSION

For the reasons set forth above,

1. Defendant Alvarez's motion for summary judgment as to Alfonso Padron's § 1983 claim (Doc. No. 132) is granted;

2. The YCA defendants' motion for summary judgment as to Alfonso Padron's § 1983 claim, intentional infliction of emotional distress claim, and wrongful discharge claim (Doc. No. 136) is granted;

3. Defendant Alvarez's motion for summary judgment as to Elida Padron's § 1983 claim (Doc. No. 133) is granted;

4. Defendant Alvarez's motion for summary judgment as to Gudelia Sandoval's § 1983 claims (Doc. No. 135) is denied;

5. Defendant Alvarez's motion for summary judgment as to Luis Ramos' § 1983 claim (Doc. No. 134) is denied; and

/////

---

[8] *See* fn. 5, above.

6.   The parties are directed to contact Courtroom Deputy Jami Thorp at (559) 499-5652, or JThorp@caed.uscourts.gov, within ten days of service of this order regarding the re-scheduling of the Final Pretrial Conference and Jury Trial dates in this action.

IT IS SO ORDERED.

Dated:   **September 21, 2018**                    _____

UNITED STATES DISTRICT JUDGE